HOWELL v. KILLIE.

1. WHEN GOVERNMENT PATENT TAKES EFFECT.—The government patent to land issued under the act of congress of July 1, 1862, and the several acts amendatory thereof to aid in the construction of a Pacific Railway etc., takes effect by relation as of the time when the railway company definitely fixes the line of its road by filing the map thereof in the office of the commissioner of the general land office.

2. DECISION BY LAND DEPARTMENT, EFFECT OF.—From the agreed statement of facts upon which this cause was tried it appears that prior to the time when the Denver Pacific Railway and Telegraph Company fixed the line of its road by filing its map, a homestead claim in favor of one Davenport had attached to the land in controversy, said land being a part of the lands claimed by the railway under its grant. In the agreed statement there being some ambiguity as to whether the homestead claim of Davenport was or was not canceled before the railway company filed its map, and there having been a contest upon due notice before the Land Department between said company and the defendant in this action; *held*, that the decision by the Land Department as to the question of fact involved in such contest might be relied on to sustain the validity of the patent against a collateral attack by defendant, he being confessedly a mere occupant of the land without any title or interest therein.

*Appeal from District Court of Jefferson County.*

THIS was an action by Isaac L. Killie, plaintiff below, to recover from Cason Howell, defendant below, possession of certain land. The cause which under our former practice would have been denominated an action of ejectment, was tried upon an agreed statement of facts, the substance of which sufficiently appears in the opinion. The finding and judgment of the district court was in favor of the plaintiff. The defendant brings this appeal.

Messrs. PERRY & CARPENTER, for appellant.

Messrs. TELLER & ORAHOOD and Mr. C. D. WHITFORD, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The land in controversy in this action was originally a part of the public domain of the United States. From the agreed statement of facts upon which the cause was determined below, it appears that before the commencement of this action the United States had executed and delivered to the Denver Pacific Railway and Telegraph Company a patent to the land, and that the plaintiff Killie through sundry mesne conveyances had succeeded to whatever title passed to the patentee of the government.

It is expressly admitted in argument by counsel for the defendant Howell that the judgment of the district court was correct and must be affirmed, unless it can be maintained as a matter of law, upon the facts as stipulated, that the issuance of the government patent was wholly without authority and the patent itself a nullity.

The only ground upon which the validity of the patent is disputed is that a homestead claim in favor of one Henry N. Davenport had attached before the railway company definitely fixed the line of its road by filing its map as required by the act of congress; and that said homestead claim remained uncanceled on the records of the general land office until

after the fixing of said line. Hence, it is contended that the land in controversy was by virtue of said homestead claim, excepted out of the grant by the express language of the act of congress of July 1, 1862, and the several acts amendatory thereof. The decision in the case of *The Kansas Pacific Ry. Co. v. Dunmeyer*, 113 U. S. 629, and other similar cases are relied on to support this view.

In the present case it appears that the Denver Pacific Railway and Telegraph Company definitely fixed the line of its road by filing the map thereof in the office of the commissioner of the General Land Office on August 20, 1869. That is the date, therefore, at which by relation the government patent to the land took effect. In one portion of the agreed statement of facts it appears that not until five days thereafter, August 25, 1869, was the Davenport homestead entry canceled. But when the whole statement is considered together, it would seem that this date is not to be exclusively relied on. The correspondence between the commissioner of the General Land Office at Washington and the register and receiver at Denver clearly indicates that on or before July 22, 1869, it was decided by said register and receiver that Davenport had forfeited his homestead claim, and that on or before said last mentioned date such decision had been officially received by the Land Department at Washington. This was nearly a month before the railway company definitely fixed the line of its road.

Furthermore, the agreed statement shows that after the railway company had fixed the line of its road and before the issuance of the government patent, Howell upon due and legal notice appeared and contested with the railway company before the commissioner of the General Land Office of the United States his right to the land under a homestead claim filed by himself in October, 1871. As a result of such contest his homestead claim was, in December, 1873, canceled, and thereupon the land was awarded to said railway company. Howell did not prosecute any appeal from such decision to the secretary of the interior; but on the contrary after the

cancellation of his homestead claim, and in pursuance of said adjudication, he vacated said land and did not re-enter the same for a period of nearly twelve years.

As a further result of such contest, the government patent was issued and delivered to the railway company in 1875. This action would indicate that it was found and decided by the Land Department of the government as a matter of fact that the Davenport homestead claim had been forfeited and canceled prior to the time when the railway company fixed the line of its road, and that there was nothing at that time appearing on the records of the General Land Office to prevent the railway company from acquiring title to the land by virtue of the several acts of congress. It would seem that a patent issued in pursuance of such a decision of the Land Department could not be treated as a nullity in an action to determine the legal title. We do not upon this review necessarily encounter the question as to the admission of evidence concerning the authority or jurisdiction of the Land Department over the land in controversy. The facts being stipulated we need only consider whether according to the stipulation the judgment of the trial court should be affirmed or reversed. *Minter et al. v. Crommelin*, 18 Howard U. S. 87; *French v. Fyan et al*, 93 U. S. 169; *Smelting Company v. Kemp*, 104 U. S. 647; *Steele v. Smelting Company*, 106 U. S. 449; *Lee v. Johnson*, 116 U. S. 48; *Craig v. Leitensdorier*, 123 U. S. 212; *Doolan v. Carr*, 125 U. S. 618; *Wisconsin Central R. R. Co. v. Stinka*, 4 Decisions U. S. Land Dept., 344; *Poire v. Wells*, 6 Colo. 409; *Seymour v. Fisher*, 16 Colo. 188.

A comparison of the *Dunmeyer Case, supra*, with the case now before us will disclose important points of difference between the two cases. In the *Dunmeyer Case* the patent was not issued to the railway company, but to the homestead claimant. Dunmeyer recognized the validity of the government patent and maintained his action upon the theory of its validity, and not against such theory. The Kansas Pacific Railway Company sought to defend the action upon

the ground that it was entitled to the government patent, although it did not obtain it. But the Land Department having decided that the subsequent homestead entry was valid, the courts sustained the patent issued in pursuance of such decision. Almost the converse of the foregoing appears in the present case. Howell had a contest with the Denver Pacific Railway Company before the Land Department as to which party was entitled to the patent; the decision was adverse to Howell and his homestead claim was canceled. The patent was thereupon regularly issued to the railway company; and now Howell, though in possession of the land, has only a naked possession upon which to rely.

The agreed statement shows that in July, 1885, after an acquiescence in the adjudication of the General Land Office for nearly twelve years, during which time the plaintiff Killie had without notice of any adverse claim paid a large consideration for the title of the railway company, Howell made a re-entry upon the land and thereupon made application to the commissioner of the General Land Office to have his homestead claim reinstated; and that from the decision of the commissioner an appeal was taken to the secretary of the interior.

It is urged by counsel for Killie that we should take judicial notice that since the agreed statement was submitted the secretary of the interior has decided adversely to Howell's application to have his homestead claim reinstated. But we do not find it necessary to discuss the effect of these subsequent proceedings, since counsel for Howell expressly says that he does not rely upon them. His reliance is based upon the proposition that a plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's title. His position is that Howell though having only a naked possession of the land cannot be ousted since the title of Killie is based upon a patent issued without authority of law. It is unnecessary to discuss these general propositions. From what has already been said, it must be apparent that we do not consider them ap-

plicable to the present controversy. Our opinion is that under the circumstances of this case the government patent was sufficient to maintain the present action in favor of plaintiff. The judgment of the district court is accordingly affirmed.

*Affirmed.*

Mr. JUSTICE HAYT being absent did not participate in this decision.

### ON PETITION FOR REHEARING.

PER CURIAM. The petition for a rehearing requires notice only in one particular. Counsel express the opinion that in considering the *Dunmeyer Case* we made the mistake of " confounding Lewis Dunmeyer, the defendant in error, with G. B. Dunmeyer who was not a party to the action." In this counsel are mistaken. Our language was : " Dunmeyer recognized the validity of the government patent and maintained his action upon the theory of its validity, not against such theory." We did not say that Dunmeyer based his action upon the government patent. Our language, though brief, was in strict accord with the facts of the *Dunmeyer Case* as reported. G. B. Dunmeyer had acquired the paramount adverse title by a valid homestead entry and patent from the United States. Thereupon, Lewis Dunmeyer who had taken a deed from the railroad company containing a covenant of warranty of good title, brought and maintained his action for breach of such covenant against the company on the theory that the company never had any title; and, therefore, its covenant was broken. See *statement* as well as opinion in the *Dunmeyer Case*, 113 U. S., particularly pages 630, 632 and 639. A careful examination will show that we did not mistake either the parties or the issues involved in that litigation.

*Petition denied.*

HAYT, C. J., not sitting.