TYNON v. DESPAIN ET AL.

1. PLEADING—SET-OFF—EVIDENCE.
Evidence of wrongful acts of the plaintiff is inadmissible on behalf of the defendant under a general denial.    Such evidence could be admitted only in support of a proper affirmative defense.

2. STATUTE OF FRAUDS MUST BE PLEADED.
Unless the contract as set out in the complaint shows that it is in violation thereof, the statute of frauds must be specially pleaded in order to take advantage of it.

3. IRRIGATING DITCHES—RIGHT OF WAY.
By act of congress a right of way is granted for the construction of irrigating ditches upon the public land of the United States.

4. SAME—STATUTE OF FRAUDS.
Full performance of a parol contract respecting the construction of an
    irrigating ditch and the right of way therefor takes the case out of
    the operation of the statute of frauds.
5. IRRIGATING DITCHES ON PUBLIC LANDS—ACTS OF CONGRESS CON-
    STRUED.
The several acts of congress relating to the right of way for the con-
    struction of irrigating ditches on the public lands of the United
    States are considered and construed in this case.

*Appeal from the District Court of Jefferson County.*

To THIS action, as originally instituted, there was but one
party plaintiff, who sued in his own behalf and for the bene-
fit of all others interested with him.    Before the issues were
made up, however, those jointly interested were made, by
order of the court, parties plaintiff.    The averments of the
complaint, as the action was thus tried, are to the effect that
the plaintiffs were the joint owners and in possession of the
Despain irrigating ditch, situate in the county of Jefferson,
which was constructed in the year 1874, and since that time
has been continuously used by plaintiffs for the purpose of
irrigating their lands; that in the year 1890,—in the spring
season of the year, and while the crops upon the lands of
plaintiffs were needing water,—the defendant broke down a
portion of the ditch, placed therein a box which allowed the
water to escape, and so interfered therewith as to cause the
water, which the ditch otherwise would have carried, to over-
flow and waste over the adjoining lands, and prevented the
full and sufficient flow of the water therein to irrigate the
lands of the plaintiffs.    The injury to plaintiffs' crops and
the ditch, as it is said, is five thousand dollars.

To the complaint an answer was filed containing, *first*, a
general denial; *second*, a defense, interposed by way of counter-
claim, wherein it is alleged that the defendant is the owner
and in possession of certain lands in Jefferson county over
which the ditch in question was built; that while the defend-
ant was the owner and in possession the plaintiffs forcibly,
and against his will, entered upon the lands and constructed

VOL. XXII—16

the ditch, and since that time have forcibly and against his will operated and maintained the same to his injury, and that plaintiffs have repeatedly, during the six years then last past, forcibly, and against the will of the defendant, broken into and entered upon defendant's lands and enlarged the ditch, and interfered with and obstructed defendant's flumes and ditches, and otherwise damaged him; and willfully, maliciously and riotously torn down and removed from their ditch a bridge which the defendant, as was his right, had erected over the said ditch, and upon his own premises, for his own convenience.

It is further alleged that the ditch was without any proper or uniform grade, and by reason of its maintenance upon the premises, and the aforesaid willful and forcible acts of the plaintiffs, the defendant has sustained damages in the sum of ten thousand dollars, judgment for which he prays.

To this answer there was a replication denying such affirmative matters; and by a supplemental replication there are three separate replies to the defenses interposed, the *first* of which is a plea of the statute of limitations; the *second*, an equitable estoppel; the *third*, a plea of adverse possession. A demurrer to such new matters set up in the replication, on the ground that they were insufficient to constitute a reply to the affirmative matters set up in the answer, was overruled by the court.

Upon the issues thus joined there was a trial to the court before a jury, which returned a verdict in favor of the plaintiffs, assessing their damages at fifteen dollars. The court refused to submit to the jury the issue as to damages to the crops of the plaintiffs, because there was no joint ownership thereof,—this claim for such damages having been inserted in the complaint as originally framed by the single plaintiff,— but the only question submitted was as to the injury of the common property of the plaintiffs, viz. the ditch, by reason of the alleged wrongs of the defendant.

A motion for a new trial was overruled by the court, and

a judgment upon the verdict was rendered in favor of plaintiffs, from which the defendant appealed to this court.

Mr. A. H. DE FRANCE, for appellant.

Messrs. MORRISON, DE SOTO & MACON, for appellees.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The numerous errors assigned may be discussed under two general heads :

1. Many of the assignments pertain to rulings of the court excluding the offer of the defendant to prove the capacity of the ditch at the time of the alleged trespasses, and the lack of uniformity in its grade. This offer was predicated upon the motion that, if originally permission from the owners of the servient estates to build a ditch was obtained, this gave to its builders the right to maintain and operate a ditch only of the size originally constructed, and of a uniform and reasonable grade ; but that if, thereafter, without express permission so to do, these ditch owners enlarged its capacity or departed from a uniform grade, these acts could be set up as a defense to a cause of action by the ditch owners based upon injuries to the ditch committed by the defendant after such enlargement or change of grade was made.

Such evidence is not proper under the general denial, for that denies the right of the plaintiffs to maintain any ditch upon the land. If, in any event, it could be material in this action, it was necessary for the defendant, by a proper affirmative defense, consisting of new matter, to set it up. Certainly it could be made available only by such a defense expressly or impliedly admitting the original right to build the ditch, but denying the right to make an enlargement or change the grade, and showing that such changes resulted to the defendant's injury. As this was not done, the court properly excluded the evidence offered, particularly as there was not coupled with such offer a claim that such changes or

enlargements added to the burdens of defendant, or in any way injured him.

For another reason this evidence was inadmissible. If the defendant might prevent plaintiffs from carrying in the ditch water beyond its original capacity, still he could not interfere with their right to use the ditch up to that limit; and when, as in this case, the same act of the defendant, which was employed to restrict the quantity of water, also infringed plaintiffs' right to use the ditch for any purpose, an action for such injury accrued to plaintiffs, which is not barred, or abated, by their act in enlarging the capacity of the ditch, or changing its grade.

2. There remains for consideration the principal question in the case, about which all other assignments of error may be grouped. The title of the land now belonging to the defendant, across which plaintiffs claim this right of way for the ditch, was in the United States government at the time the ditch was constructed, in the year 1874. Then, also, all of these lands, except what is referred to in the evidence as the "railroad tract," had been filed upon, either under the homestead or preëmption acts of congress, long after the year 1866, and were in the possession of the occupying claimants. Patents issued upon these entries in the years 1875 and 1887.

The railroad tract was part of the grant of the federal government to the Denver Pacific Railway Company, which, thereafter, and before patent, was acquired by the Union Pacific Railway Company, under the acts of congress approved respectively July 1, 1862, July 2, 1864, July 3, 1866, and March 3, 1869. These acts are commonly known as the "Pacific Railroad Acts." See U. S. Statutes at Large, vol. 12, 489; Public Statutes of the United States (1864), 356; (1866) 79; (1869) 324.

To the building of the ditch across all of these lands, except the railroad tract, the occupying claimants gave their consent in consideration of the benefits which they considered the ditch for agricultural purposes would be to their

holdings. No express consent was given for building across the railroad tract, for it was then unoccupied. No question, until about the time of the alleged trespasses of the defendant, has ever been raised by any of the owners or occupiers of these lands as to the plaintiffs' right to a ditch over the premises; and from the time of its construction until said trespasses, the ditch was continuously maintained and operated by the plaintiffs with the knowledge, acquiescence and consent of the defendant and his grantors; and defendant himself at one time expressly recognized the right of the owners of the ditch to maintain the same by an agreement in writing to pay, and by paying, five dollars for the use during one season of a certain quantity of water conveyed through the ditch for irrigating his land.

It is true that at the trial an offer was made by the defendant to show that he objected to any enlargement of the ditch, and did not recognize that plaintiffs had any right to make any alteration therein, but this testimony as to enlargement, as we have elsewhere determined, was not pertinent to the issues. But, if it were, it would not be inconsistent with the fact of the defendant's recognition of the easement as originally existing. Before his purchase the defendant knew of the existence and use of this ditch by the plaintiffs, although in the deeds of conveyance to the defendant of the lands across which this ditch was built no exception of the right of way of the ditch was inserted, and no reference to the same, or reservation thereof, was made.

It is now insisted that the plaintiffs have no right to any ditch across these lands, because the evidence discloses that the plaintiffs, at the time of its construction, had therefor only the verbal agreement, or parol license, of the defendant's grantors, and no permission at all as to the railroad tract. Thus are raised these propositions of law:

*First.* May one acquire, for an irrigating ditch, the right of way across lands, the legal title of which is in the United States, but which are then in the occupancy of another under entries upon said lands made since 1866, without the con-

sent of such occupant, or with his verbal consent, given during his occupancy and before patent?

*Second.* May such right, if it can thus be acquired, be asserted against the grantee of such patentee, whose deed contains no reservation of the right of way?

It is contended by defendant that only by grant, or prescription presupposing a grant, can such an easement be created; that plaintiffs, relying only upon a parol license of defendant's grantors, that license, being revocable, was revoked when his grantors conveyed to him without reserving the easement. We are cited to the following cases as so deciding, under our statute of frauds: *Yunker v. Nichols,* 1 Colo. 551, as modified or reversed by *Ward v. Farwell,* 6 Colo. 66; *Burnham et al. v. Freeman,* 11 Colo. 601; *Stewart v. Stevens,* 10 Colo. 440.

We might add *Oppenlander v. Left Hand Ditch Co.,* 18 Colo. 142.

Whatever the doctrine may be elsewhere, this court and the court of appeals have held that, unless the contract as set out in the complaint shows that it is in violation thereof, the statute of frauds must be specially pleaded in order to take advantage of it. . *Tucker v. Edwards,* 7 Colo. 209; *Hunt v. Hayt,* 10 Colo. 278; *Garbanati v. Fassbinder,* 15 Colo. 535; *Hamill v. Hall,* 4 Colo. App. 290.

The complaint in this respect was good, and there was no pleading of the statute of frauds. Defendant's contention, therefore, might be dismissed upon this ground, but as the plaintiffs, in making out their case, saw fit to prove this oral agreement, or parol license, we shall assume that the defendant may still, if there is anything in it, press this point, and therefor we shall base our decision upon broader grounds.

But the right to this easement does not rest upon a parol agreement between two private persons, or upon a parol license from one to the other, and so these authorities are not in point. If, however, the claim here rested upon such basis, it might be vindicated upon the principle that full performance of a parol contract respecting an interest in lands takes

it out of the statute of frauds (*Schilling v. Rominger*, 4 Colo. 100), or that parol license to do an act upon the licenser's land is not revocable, in so far as it has been executed. Washburn on Easem. & Serv. (3d ed.), p. 678, *et seq.*

In our opinion, the questions involved in this case have substantially been determined by the supreme court of the United States in the cases of *Jennison v. Kirk*, 98 U. S. 453, and *Broder v. Water Company*, 101 U. S. 274.

In 1866 congress passed an act, the 9th section of which contained this declaration:

" That whenever, by priority or possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals, for the purposes aforesaid, is hereby acknowledged and confirmed: *Provided, however,* that whenever, after the passage of this act, any person or persons shall, in the construction of any ditch or canal, injure or damage the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage." 14 Pub. Stats., 253; Rev. Stats. of the U. S. (1873-1875), p. 432, sec. 2339.

July 9, 1870, congress passed an act amendatory of the foregoing act of 1866, in which, *inter alia*, it was provided that "all patents granted, or preëmptions or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the ninth section of the act of which this act is amendatory." Pub. Stats. (1870), p. 218, sec. 17; Rev. Stats. U. S. (1873-1875), p. 432, sec. 2340. Ever since this date all patents have contained reservations of ditches of the character designated.

The entire section 9 was exhaustively discussed in *Jenni-*

*son v. Kirk, supra,* and the section, without the proviso, was before the court in the case of *Broder v. Water Company, supra.* In the latter case it was held that as to ditches, or canals, in existence before, or at, the date of its passage, "This act was an unequivocal grant of the right of way, if it was no more. As the plaintiff's right to the lands patented to him and his brother commenced subsequently to this statute, he took the title subject to this right of way, and cannot now disturb it." It was further held that this section of the act "was rather a voluntary recognition of a preëxisting right of possession, constituting a valid claim to its continued use, than the establishment of a new one."

As to lands granted under the provisions of the Pacific Railroad acts, which are precisely the same in the case at bar as in that case, it was also held that under the reservation clause of the act of July 2, 1864, the railway company took the lands therein granted subject to "*other lawful claims.*"

Under the act of 1866 it was held that whenever the United States government had, by its conduct, recognized and encouraged such rights to the use of water for agricultural purposes, and the right of way for the construction of ditches therefor, as were recognized and acknowledged by local customs, laws and the decisions of the courts, the government was bound, even before the passage of the act, to protect those persons in whom such rights became vested. Under the Pacific Railroad acts it was held that when such *lawful claims,* as the right of way for ditches for agricultural purposes, had been so recognized by the government, the grant to the railway company of lands under that act was subject to such *lawful claims,* and that such *lawful claims* are unaffected by the grant.

That such rights as the use of water for irrigation and the right of way for ditches for carrying water have always been recognized by the local customs and laws of Colorado, needs at this day no argument or citation of authorities; but, if it

did, we might refer to numerous decisions of this court to that effect.

In *Jennison v. Kirk, supra,* in discussing the rights of owners of ditches constructed after this act of 1866 took effect, over lands also entered upon thereafter, Mr. Justice Field, who rendered the opinion of the court, said:

"The proviso to the section conferred no additional rights upon the owners of ditches subsequently constructed: it simply rendered them liable to parties on the public domain whose possessions might be injured by such construction. In other words, the United States by the section said, that whenever rights to the use of water by priority of possession had become vested, and were recognized by the local customs, laws, and decisions of the courts, the owners and possessors should be protected in them; and that the right of way for ditches and canals incident to such water rights, being recognized in the same manner, should be 'acknowledged and confirmed;' *but where ditches subsequently constructed injured by their construction the possessions of others on the public domain, the owners of such ditches should be liable for the injuries sustained.*"

It is clear, therefore, that the railway company took its lands subject to the burden of this easement. It is equally apparent that the act of 1866 operated as a grant to the owners of this ditch of a right of way across the lands of an occupying claimant, under the United States land laws, when the inception of the latter's rights accrued under filings made after the passage of the act. This right of way for the ditch, it is true, must be compensated for, if its construction injures the *possession* of those on the public domain; but so far as the right to burden the land with a ditch is concerned, by this act of congress the absolute right was granted by the government to build a ditch across it. When the occupant thereof voluntarily consents to the construction of a ditch, without exacting compensation, or permits it to be built in return for benefits to be enjoyed therefrom, the right by its

owners to maintain and use the ditch as built is absolute against all persons.

It remains only to determine the rights, if any, of the defendant in this case. First it should be said that he knew that this ditch was built across these lands which he was about to buy, and he knew it before he bought, and parted with his money. Under the said acts of congress the grantees of the land, now owned by the defendant, took them subject, by operation of law, to the burden of the right of way for the ditch. This easement, under our laws, certainly is continuous, apparent and necessary. The defendant, therefore, took these lands with the same burdens, and, as to the easement of this right of way, his estate is to the same extent servient as it was in the hands of his grantors.

Such being our conclusion, it becomes unnecessary to pass upon the specifications relating to the counterclaim interposed by the defendant, for the acts of the plaintiffs set forth in this pleading, and relied upon by the defendant as constituting causes of action in his favor, were acts which the plaintiffs might lawfully do if they had a right of way across defendant's premises. Having determined this right in plaintiffs' favor, it follows that the defendant had no cause of action against the plaintiffs, even if (which we do not decide) one tort may be counterclaimed against another separate and distinct tort.

The foregoing consideration sufficiently dispose of all the questions involved. Indeed, upon the admitted facts, the court might well have directed the jury to find for the plaintiffs, submitting to them only the issue of the amount of damages for the injury to the ditch.

The judgment should be affirmed, and it is so ordered.

*Affirmed.*