THE FARMERS' HIGH LINE CANAL AND RESERVOIR COMPANY v. MOON.

1. POSSESSORY RIGHTS.

An occupant of a part of the public domain holding under the statute of this state has no rights therein as against the United States or its grantees.

2. RIGHT OF WAY FOR DITCHES.

Appellee squatted upon a part of a school section in 1871. In 1873, the construction of appellant's ditch across the premises was begun. After this, but before completion, appellee filed a declaratory statement under the statute. In 1878, appellee contracted for the purchase of the land from the state, and in 1885 received a patent therefor. *Held,* appellee was not entitled to damages for the land taken for the right of way; and, further, that appellee, by the acceptance of a patent reciting that it was subject to vested and accrued water rights, * * * rights to ditches, etc., was bound by its terms.

3. COSTS.

Although the statute provides that petitioner in condemnation proceedings shall pay all costs, those in the appellate court which accrue

or are occasioned by reversible error committed in connection with the trial of an independent cause of action injected into the case by appellee should be taxed to him.

*Appeal from the County Court of Jefferson County.*

THIS is a condemnation proceeding under the eminent domain act. The petition alleges the ownership in the petitioner of a certain irrigating ditch theretofore built over and across the lands of the respondent, Moon, in Jefferson county, Colorado. It avers the necessity for enlarging and widening the ditch, and that certain strips of respondent's land along said ditch are necessary therefor, and prays that such strips of land be decreed to it for the purpose of a right of way upon the ascertainment and payment of compensation, as provided for by the statute.

To this petition the respondent filed a cross petition denying the ownership by the petitioner of the right of way for the original ditch, and alleging ownership thereof in himself, though theretofore wrongfully appropriated by petitioner and its grantors, and praying that ascertainment of compensation be made for this original easement, as well as for the additional right of way asked for by the petitioner.

To this cross petition the petitioner filed an answer setting up a number of separate defenses to respondent's cause of action. These defenses, so far as material, sufficiently appear in the opinion.

Messrs. OSBORNE & TAYLOR, for appellant.

Mr. A. H. DE FRANCE, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

We are not called upon to determine whether, if objection had been made, the cause of action set up by respondent in its cross petition could thus be litigated, for the parties consented that the issues presented by the various pleadings might be tried in the proceeding then pending.

The respondent's land is a part of section 36, commonly known as "school land," which was given to the state by the national government. The respondent, without any filing, but merely as a squatter, went upon this land in 1871. The actual work of constructing petitioner's ditch upon this particular tract was begun in the summer of 1873, although the preliminary steps were theretofore taken. After the ditch was begun, but before its completion, the respondent, under the provisions of what is known as the "occupying claimant's act," filed his declaratory statement as prescribed by section 2678, General Statutes of 1883. Whatever possessory rights were thus conferred, it is clear, not only by virtue of the provisions of section 2686 of the same act, but in the absence of such a provision, the respondent acquired no rights of any kind as against the United States, or its grantees.

From the time of his first entry, with only such rights as occupancy and the filing of a declaratory statement gave, the respondent so remained upon the premises until April or May, 1878. About this time he entered into a contract of purchase for this tract with the state of Colorado, and upon the 24th day of May, 1878, there was delivered to him by the state a certificate of purchase therefor; and upon subsequent compliance by him with the terms of the purchase, the state, on June 10, 1885, issued its patent for the land in controversy, which patent, without any protest, was accepted, and duly filed for record by the respondent. The grant, as expressed in the patent, was made "subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purposes and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws and decisions, or as provided by law."

The state, then, was the immediate grantor of the respondent, and the ultimate source of title was the United States. As to the foregoing facts there is no controversy, and they appear from the testimony introduced in behalf of the respondent. Unless the character of this as school land with-

draws it from the operation of the act of congress of July 26, 1866 (Rev. Stats. 1873–4, p. 432, sec. 2339), the rights of the petitioner and its grantors therein are superior to those of the respondent, aside from the effect of the exception in the patent. This we have decided in a recent case—*Tynon v. Despain, ante,* p. 240.

But it is said that section 36, by the organic act of the territory of February 28, 1861, so providing (12 U. S. Stats. at Large, 176, sec. 14), was reserved for the purpose of being applied to schools in the state thereafter to be erected out of the territory, and that, being so reserved, it is argued that the section was thereby appropriated to such uses as that it was not subject to any subsequent legislation by congress assuming to grant or in any way affect it. The state, therefore, it is said, took this section free from the operation of the act of 1866. To this we are cited to *Wilcox v. Jackson,* 13 Pet. 498; *Leavenworth, etc., R. R. Co. v. United States,* 92 U. S. 733, and *Newhall v. Sanger,* 92 U. S. 761.

The doctrine of these cases is "that whenever a tract of land shall have been once legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands; and that no subsequent law, proclamation or sale would be construed to embrace or operate upon it, although no reservation were made of it." See *Leavenworth, etc., R. R. Co. v. United States, supra.*

Whether the grant from the United States was one *in præsenti,* under the act of 1861, to take effect upon the formation of the state, or was made by virtue of section 7 of the enabling act of March 3, 1876 (1 Mills' An. Stats., p. 92), we need not determine; for in *Broder v. Water Company,* 101 U. S. 274, it was held, in a case somewhat similar to the one at bar, that the act of 1866 referred to " was rather a voluntary *recognition of a preëxisting right of possession,* constituting a valid claim to its continued use, than the establishment of a new one ; " from which it would seem to follow that the petitioner's easement in controversy here was

a preëxisting right, antedating the passage of the organic act of the territory, and so protected by the rule in the *Tynon Case, supra*. But, as was said in the *Broder Case, supra*, so we say here, the petitioner is not under the necessity of relying solely, or at all, upon the statute of 1866. Whether the title of the state was acquired under the organic act or the enabling act is again immaterial, for, by examining the patent from the state (the acceptance of which by respondent bound him by its terms), we find that this patent expressly excepts from the grant all vested and accrued water and ditch rights, of which character unquestionably the rights of petitioner are.

It will be observed that respondent does not set up a claim for damages caused by the construction of this ditch to his possessions as an occupying claimant, but for damages occasioned to him by the taking of his lands for the purposes of a right of way. The petitioner having traced title to itself in this right of way from those constructing the ditch, the respondent cannot recover damages for the land thus taken. As he makes no claim for damages to his possessions as an occupying claimant, and as no cause of action therefor has been pleaded, we are relieved of the necessity of determining whether, under the evidence, such a cause of action ever accrued, and, if so, whether it is established by the evidence, or barred by the statute of limitations.

The other errors assigned and argued by counsel require no consideration, for the rulings of the court throughout the trial, and its instructions to the jury, were based upon propositions of law at variance with the conclusion reached by us on the main question involved. In view of this conclusion, the verdict was unwarranted by the evidence, and the judgment was erroneous.

The appellee insists that, in the event of a reversal, the costs of the appeal should be taxed to the appellant, inasmuch as the respondent in such compulsory proceeding is not only in court against his will, but that the statute itself provides that all costs shall be paid by the petitioner. What-

ever merit would be in this contention had the reversal been necessitated because of an error of the trial court upon some matter connected with the issues presented by the petition, when, as here, the reversible error was committed in connection with the trial of a separate and independent cause of action injected into the case by the appellee, at least the costs in this court of an appeal from the judgment reversed for such error should be taxed to the appellee.

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*