Wilson, J.
This was a suit in equity, the object of which was to establish and enforce a trust in certain real estate arising from a transaction in which it was claimed all of the purchase money had been paid by plaintiff, but that the title had been conveyed by deeds, absolute upon their face, to another. It was alleged in the complaint that about 1875 the plaintiff, Doll, purchased two separate but adjoining tracts of land in Arapahoe county, paying all the purchase money therefor, but by his direction and for his convenience, in order to keep his partnership business separate and distinct from his private business, he had the deeds' executed to Caroline Doll, then unmarried, and his only daughter, who was residing with him at the time. • That at the time of the taking of each deed, “it was distinctly understood and agreed by and between this plaintiff and said Caroline Doll that said land was taken and held by her and said deed received for this plaintiff and as his land, and that said Caroline Doll would at any time on request reconvey the said lands to this plaintiff.’,’ That in April, 1877, Caroline Doll was married to defendant, W. Scott Gifford, and died in August, 1878, without having conveyed said property to plaintiff. That she died intestate, leaving as her sole heirs at law her husband and her infant child, Caroline Lotta Gifford, also a defendant. There was no allegation that during the lifetime of his daughter plaintiff ever requested or attempted to secure any conveyance of these lands to himself; or that after her death until the beginning of this suit on June 21, 1892, he ever made any attempt to have the title vested in himself. The complaint also alleged that plaintiff, relying upon the agreement and promises of Ins daughter, entered upon and took possession of these lands immediately after the conveyance to her, and ever since had *69 remained in such possession, control and charge, and had expended and laid out considerable sums of money thereon for improvements. Plaintiff prayed a decree that he was the owner of the lands, and that the title be conveyed to him. He also prayed, if he was not found to be entitled to the reconveyance of said lands, that an accounting be had between him and the defendants as heirs of the deceased, of all the matters and tilings growing out of the ownership, occupancy, possession and improvements of said lands, and of the expenditures and disbursements thereon, and receipts therefrom by plaintiff. Defendant, W. Scott Gifford, answered, denying specifically upon information and belief the various allegations in the complaint, and alleging upon information and belief that the land was paid for and purchased by and with the money of Caroline Doll, and that the deeds were taken in her own name, for her sole use and as her sole property, and that plaintiff had no interest or right therein whatsoever. He also set up by way of cross-complaint that said Caroline Doll in her lifetime was seized in fee simple of the premises and every part thereof, and that the plaintiff did not have, and never had, any interest or title thereto or therein, and prayed a decree that the title to the premises be adjudged, confirmed and quieted in the defendants, etc. The minor defendant appeared by guardian ad litem, and answered in the usual form, putting in issue of course all of the matters alleged in the complaint which were prejudicial to her interest. In the trial, the court called a jury to its aid, and submitted to it various proper interrogatories. The jury found in substance that it was the money of plaintiff which purchased the tracts, but that it was intended as a gift or advancement to his daughter. The court adopted these findings of the jury, and rendered a decree in favor of the defendants.
The assignments of error on which the plaintiff seeks a reversal resolve themselves substantially into one: that the findings and decree were contrary to and unsupported by the evidence. In support of this it is alleged and strenuously insisted that as to the ownership of the land the only issue *70 under the pleadings was as to who paid for it, and this being found by both court and jury in favor of the plaintiff the decree should have been in his favor. To establish this point plaintiff relies upon the fact that it was nowhere alleged in the answers or either of them that the payment of the money or the conveyance of the lands was a gift or advancement by plaintiff to his daughter, and that it therefore was not an issue in the case. In other words, plaintiff contends that having established that the purchase money for the lands was paid by himself from his own money, this was all that was necessary for him to show in order to secure a decree. We cannot agree with counsel either as to what were the issues under these pleadings, or as to what it was incumbent upon plaintiff to show before he could secure a decree in his favor.
The complaint was in fact, construed strictly, a declaration on an express trust. It alleged a positive agreement and promise upon the part of the grantee to convey to him. It is true that this promise was not alleged to be in writing, which would have been necessary under the statute in order to establish an express trust, but this was matter of proof, and was not necessary to be specificaUy alleged in the complaint. Learned v. Tritch, 6 Colo. 443. Strictly speaking, therefore, defendants were called upon to answer only to the complaint, whose allegations were framed to show and establish an express trust. Upon trial, however, plaintiff offered no evidence showing or tending to show the existence of an express trust, but sought a recovery solely upon the ground of a resulting trust. If he had intended to frame his complaint so as to show a resulting trust, it was not necessary at all for him to have alleged any promise or agreement of the grantee to reconvey. A resulting trust arises in the absence of any agreement or promise. It arises by operation of law. When it is shown that a party pays the purchase money for real estate, the law raises a presumption that he who paid it intended to reap the benefits of it and to be the beneficiary, although the title was placed in another, and this presumption becomes conclusive unless overthrown by stronger evi *71 clence. In this case therefore the defendants were not advised until the trial, on the introduction of testimony by plaintiff, that the plaintiff sought to rely upon a resulting trust. Plaintiff did not undertake to amend his complaint, and if the defendants saw fit to meet the plaintiff on the ground that he had himself selected, we cannot see why he should complain because they did not amend their answer. In ordinary actions, as we have said, in order to prima facie establish a resulting trust, all that is necessary is to establish the fact that the party seeking to enforce the trust paid the purchase money. The law then raises the presumption of the trust. It is different, however, where the purchaser and he who seeks to establish a resulting trust taires the conveyance in the name of a wife or child or some other person for whom he is under some natural or moral or legal obligation to provide. When this appears, the presumption of a resulting trust is rebutted, and the law will presume, until the contrary is shown, that a gift or advancement was intended. It would have therefore been necessary for the plaintiff to have shown in this case by competent evidence before he was entitled to a decree, not only that he paid the purchase money, but that it was not intended as a gift or advancement to his daughter. This was incumbent upon him under the allegations of his own complaint, because it showed upon its face the relationship which existed between him and the grantee in the deeds. We think, however, that even if it be admitted, and we are not disposed to deny it, that under the allegations of this complaint plaintiff was entitled to show either an express or a resulting trust, the answer of W. Scott Gifford was entirely sufficient, even if it was necessary to put in issue everything which was required to establish such a trust. The relationship between plaintiff and the grantee appeared both in the complaint and in the answer, and it was specifically averred in the answer, in addition to the denial of the payment of the money by plaintiff, that the' deeds were taken in her own name, for her sole use, and as her sole property, and that plaintiff had no right or interest therein or thereto whatsoever, and never did have.
*72 There is another question, however, which is conclusive against the contention of plaintiff on this point, and to which his counsel have in no manner referred. One of the defendants was an infant, and her answer put in issue everything which was alleged in the complaint adverse to her interest, however the complaint might be construed. It placed upon the plaintiff the burden of proving everything that was necessary for him to show in order to establish his alleged trust in the lands, and the most material of these things was that no gift or advancement was intended when he procured the title to the property to be placed in his daughter, the mother of the infant defendant. 2 Pomeroy’s Equity Jurisprudence, §§ 1039-1041; 2 Story’s Equity Jurisprudence, §1203; Perry on Trusts, § 144 et seq.; Smith v. Smith, 144 Ill. 307. Our own supreme court has in fact recognized the rule in very positive language. It says, “ As a general rule, where it is fairly proven that one person has paid the purchase money for land, and the conveyance has been taken in the name of another, the law prima facie presumes a trust in favor of the person who has paid the purchase money; but the prima facie presumption is different in case the purchase may fairly be deemed to have been made for the benefit of the party receiving the conveyance from motives of natural love and affection on the part of the person paying the purchase money. In the latter case the conveyance is deemed prima facie an advancement from which no trust results.” Therefore, if the adult defendant herein had made no answer at all and made default, it was still incumbent upon plaintiff to have proven everything necessary to have established a trust. The .answer of the infant defendant required it. He could have had no recovery even against the adult in case of his default, without he recovered also against the infant. Trusts are not administered piecemeal, and he must therefore have recovered against both, or failed as to both. Learned v. Tritch, supra. It was therefore immaterial, so far as concerns this contention of plaintiff, what the answer of W. Scott Gifford contained. Upon the allegations of the complaint alone, the *73 law raised a presumption that a gift or advancement was intended. It was not necessary for the defendant to specially plead that which the law may be said to have pleaded for him. The complaint alone raised the issue.
Irrespective of this question as to whether the findings and the decree were contrary to and unsupported by the evidence, it may be said at the outset that the defendants were entitled to prevail if the plaintiff did not establish his case by a fair preponderance of evidence. The burden of proof was upon .him. In ordinary cases, where it is sought to establish a trust and contradict the terms of a deed, the proof is required to be of a strong and convincing character. As said by the supreme court of Alabama, “ The presumption arising from the conveyance that it fully speaks the whole truth must prevail until the contrary is established beyond reasonable controversy. The burden of removing this presumption rests upon the party asserting the contrary, and it is not enough for him to generate doubt and uncertainty. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive evidence.” Lehman v. Lewis, 62 Ala. 129. Much more so is it required that the evidence to establish a trust should be full, complete and conclusive, in a case like that at bar, where the relationship between the parties is that of father and child. Annis v. Wilson, 15 Colo. 242; Read v. Huff, 40 N. J. Eq. 234; Long v. McKay, 84 Me. 200; Smith v. Smith, supra. The reason upon which this rule is founded is well stated by Judge Story: “The moral obligation of a parent to provide for his children is the foundation of this exception, or rather of this rebutter of a presumption, since it is not only natural but reasonable in the highest degree to presume that a parent by purchasing in the name of a child means a benefit for the latter in discharge of this moral obligation and also as a token of parental affection. This presumption in favor of the child being thus founded in natural affection and moral obligation ought not to be frittered away by nice refinements. It is perhaps rather to be lamented *74 that it has been suffered to be broken in upon by any sort of evidence of a merely circumstantial nature.” 2 Story’s Equity Jurisprudence, § 1203, supra. Tested by tins rule, we think that the decree was fully warranted by the evidence. There was not only a failure on the part of plaintiff to substantiate by a preponderance of the evidence what it was incumbent upon him to prove, but the preponderance of evidence clearly appears to us to have been in favor of the defendants. On account of the long time which had elapsed between the occurrences upon which the action was founded and the trial, and on account of the death of the grantee in the deeds, it was of course not unreasonable that there should be a great lack of positive testimony, but we fail to discover any circumstantial evidence or any circumstances which would be sufficient, without any evidence whatever on the part of defendants, to substantiate the claim of plaintiff. The title to the major portion of the real estate in question was acquired through a sale under a deed of trust in which plaintiff was the trustee, executed to secure a loan made in the name of Caroline Doll. There was some evidence, very slight, consisting only of statements by plaintiff himself, that plaintiff sometimes made loans in the name of his daughter, but there was no evidence that such was the case in this particular transaction. Whatever presumption of this character, if any, may have been raised however by the evidence as to other loans, was wholly rebutted and overcome by the testimony of several witnesses that during the life of the daughter plaintiff stated that the realty was her property, and after death stated that it was the property of his grandchild, for whom he was holding and managing it. Even the evidence as to whether or not the purchase money paid was the money belonging to plaintiff was of a very weak and unsatisfactory character, and there was no evidence whatever to show or raise a presumption of any intention on his part at the time of the purchase to reserve any trust in the lands or claim any benefit from the purchase. On the contrary the mere fact that the plaintiff allowed seventeen years to elapse, *75 fourteen of them after the death of his daughter, before he ever attempted to assert any claim to the lands in controversy, should be sufficient to conclusively rebut any possible presumption that he ever intended to claim the land. The lapse of such time might not necessarily constitute such laches as to estop plaintiff from asserting his claim. It might be explained as was the case in Warren v. Adams, 19 Colo. 515. But there was no attempted explanation of the delay, and the circumstances were not such as to constitute in the slightest degree an excuse for his négligence. When his daughter died in 1878 leaving an infant heir, he knew as well as he did when he commenced this suit in 1892 that if he desired to enforce this trust, which he then asserted, and secure the legal title to the property in question, it was necessary for him to ask the aid of a court in equity. This feature is of overwhelming weight. If it were not, the stability of land titles, upon which so materially depends the prosperity of the people and of the country, would become a myth rather than a reality. In addition to this, the evidence shows that at the time when these conveyances were made the plaintiff was in a very prosperous financial condition, and what more reasonable to suppose than that he should attempt to make some little provision for his only daughter? Nor can it be conceded that the fact of the plaintiff taking possession of, and assuming control and management of the property is of itself sufficient or of any great weight to rebut the presumption that the purchase was intended as an advancement. It was only natural that the father should manage and control the business affairs of an only daughter, especially affairs of this kind, the management of farming lands, with which she would not be supposed to have any familiarity. The fact should not militate against her rights nor tend to defeat her title, especially when it is urged long subsequent to her death. Perry on Trusts, § 146; Bogy v. Roberts, 48 Ark. 17. With reference to the time following the death of the daughter it was testified to by defendant Gifford, the surviving husband, that he in behalf of his infant daughter, he not *76 then knowing that he himself had any interest, or was an heir to any interest in the property, agreed with the plaintiff that he, plaintiff, might retain possession of the property and enjoy its rents and profits, provided that he paid all taxes and other expenses. This was denied, it is true, by the plaintiff, but it was in evidence, and it was so found by both the jury and the judge. Under the usual rule, we are of course not disposed to interfere with this finding.
It is insisted, however, by plaintiff, that even if he is held to be wrong in his contention as to the question of trust and the ownership of the land, still the court erred in not decreeing an accounting and allowing him to recover for money paid for taxes and for expenses necessarily incurred in and about the protection of the property. As to improvements, it is exceedingly doubtful whether the plaintiff has brought himself within the rule which would entitle him to recover for them in any event, because they were made, if at all, when he knew that the legal title to the land vested in another party. They were not made by him under a bona fide even though mistaken claim of title. Even if it be claimed that he asserted a right to the equitable title, it may be said that both the jury and the court found against him in this respect. Waiving, however, a discussion of this legal question, it is sufficient to say that the court heard considerable testimony offered by plaintiff as to the character, nature, and value of the improvements made by him upon the premises, and as to the amount of taxes which he had paid, and conceding even that he was entitled to reimbursement for this amount, it is unquestionably true that he must also have accounted to the estate for the reasonable value of the use and occupation of the land. It appears from this evidence that this amount would have exceeded to a considerable extent all of the combined sums which he had advanced and expended upon the property. He has therefore no right to complain because the court refused to refer the matter for an accounting. If any one was prejudiced, it was the defendants, and they do not complain. The evidence dearly shows that the plaintiff *77 was not prejudiced by tbe refusal of an accounting, and therefore there is no error in this respect.
The decree seems to be fully sustained in all respects by the evidence, and being unable to discover any material error of the trial court prejudicial to the plaintiff, it will be affirmed.

Affirmed.