[No. 5222.]
[No. 2838 C. A.]

## FOSTER v. BERRIER.

1. **Trusts—Resulting Trusts—Payment of Consideration—Husband and Wife.**

Where a bond for a deed was made in the name of the wife, and the husband paid the consideration in order, as he testified, that she might have a home in case anything should happen to him, the transaction constitutes a valid gift, and not a resulting trust.—P. 402.

2. **Same—Evidence—Sufficiency—Presumptions.**

In an action to quiet title, the issue was upon the question of whether the bond for a deed made to a certain woman was impressed with a resulting trust in favor of plaintiff, who had paid the purchase price. Plaintiff testified that he had caused the bond to be made to the woman so that she would have a home in case anything should happen to him. Both had the same surname and were living together, and, when directing the bond, and repeatedly in his testimony, plaintiff referred to her as "Mrs.," and once at least, while testifying, referred to her as his wife. One witness testified to a conversation in which the woman had stated to plaintiff that he was not her husband and never had been, and that she had no husband. Held, that, for the purposes of this case, the evidence is sufficient to warrant a finding that they were husband and wife, since their conduct was such as to lead any one to believe that they were; and it will be presumed that they were honest people, and were not sustaining a relationship violative of law.—P. 403.

3. **Quieting Title—No Title in Plaintiff—Fraud of Defendants Cannot Be Inquired Into.**

Plaintiff brought an action against his wife and another to quiet title to certain lands for which he had paid the purchase price, but for which a bond for a deed had been made out in his wife's name, who had assigned the same to her co-defendant, and the latter had obtained a warranty deed therefor. Held, that, since the bond made out to the wife constituted a valid gift and not a resulting trust, although the transaction between the defendants bears sufficient evidence of bad faith and fraud to probably result in setting the conveyance aside at the instance of creditors of the wife, or at the instance of plaintiff had he any legal or equitable interest, since creditors are not complaining and the plaintiff has no interest in the property, the nature of such transaction cannot be investigated in this proceeding.—P. 403.

*Appeal from the District Court of El Paso County.*
*Hon. L. W. Cunningham, Judge.*

. Action by S. B. Berrier against Alice Foster
and Ellen Berrier. From a judgment in favor of
plaintiff, defendant Foster appeals.    *Reversed.*

· Mr. C. B. WARD and Messrs. ROBINSON & MC-
HARG, for appellant.

Mr. ROBERT L. HUBBARD and Mr. GEORGE W.
MUSSER, for appellee.

CHIEF JUSTICE STEELE delivered the opinion of
the court:

.The plaintiff brought his action in the district
court of El Paso county to quiet title to certain real
estate situated in the city of Colorado Springs. In
response to the complaint, the defendants answered
by general denial, and, by further answer and cross-
bill, the defendant Foster alleged that she purchased
the property for a valuable consideration, having
procured an assignment from the defendant Ellen
Berrier of all her right, title and interest in and to
a certain bond conditioned to convey the property;
and, further, that the owners thereof executed to her,
under said assignment, a warranty deed for the
premises. The replication alleges that no considera-
tion whatever was paid by said Alice Foster to said
Ellen Berrier, and that he, the plaintiff, purchased
said property from the owners thereof and caused
them to make, execute and deliver to him a bond
for a deed, and that the said Ellen Berrier's name
was, by his procurement, inserted in said bond as
the purchaser, and that said Ellen Berrier held the
legal title thus created for the plaintiff, and not
otherwise; all of which facts the said defendant Alice

Foster well knew before and at the time of the said pretended assignment.

The court found that the plaintiff had paid all the money toward the purchase of said property under the bond for deed, and that he was the owner of the property, subject to certain mortgages and to a loan placed thereon by Alice Foster; that the said Alice Foster paid no money whatsoever to Ellen Berrier, and that, if she did pay any money to Ellen Berrier, she paid it with full knowledge and notice of the rights of the plaintiff and of his being in the undisputed possession at the time such money was paid.

Upon the trial the plaintiff testified: "We bought the property from Mr. Fortsen. We have had two conversations in regard to buying it, and I told Mr. Fortsen to go ahead, I would pay for it. Annie Stockbridge and William Clark owned the property. I got a bond for a deed. Payments were to be made ten dollars a month. I was to have a deed when the lot was paid for. The bond was in Ellen Berrier's name; this was done because I always wanted her to feel that she would have a home if I should drop off or anything of that kind— that she would have a home. We paid the bank ten dollars a month and interest on the ten dollars. I made four payments myself, and Mrs. Berrier made some. I furnished all the money for these payments. The money was furnished by me from my labors. I don't know Mrs. Foster. Mrs. Berrier does not live at home now; don't know where she is. She left home on the second of June last. I made the last payment on the second of June."

Upon cross-examination he said: "The purchase was made April 1, 1901. I told Mr. Fortsen to go ahead and sell the property, that I would pay for it; to sell to Mrs. Berrier, and I would pay for it.

I told her to go ahead and make the deal and I would pay for it. She made the deal and I furnished the money. It was agreed that it should be in her name. The only reason for doing that was, that in case I should happen to die she would know she had a home. It was purchased for her home; that was the original intention at the time of the purchase, and to be her property.''

Upon re-direct examination he said: "I and Mrs. Berrier were living on the lot at the time she left. I am still living there."

It does not appear in the pleadings that the plaintiff, S. B. Berrier, and the defendant, Ellen Berrier, were husband and wife, but from the plaintiff's testimony it does so appear. The rule with respect to trusts resulting from the payment of the purchase price is not the same when such relationship exists as when the transaction is between strangers. In the case *Rowe v. Johnson*, 33 Colo. 469, this court, quoting with approval the language used by the court of appeals in *Doll v. Gifford*, 13 Colo. App. 67, said: "Ordinarily, all that is necessary to establish a *prima facie* resulting trust, is to show that the party seeking to enforce the trust paid the purchase money, and the law presumes that he intended to reap the benefits, although the title was taken in another's name. But when title is taken in the name of a wife or child, or some other person for whom the one furnishing the money is under some natural, moral or legal obligation to provide, the presumption is that it was intended as a gift or advancement, and not as a trust. In the latter case, one seeking to establish a resulting trust must show, not only that he paid the purchase money, but he must also show that he did not intend it as a gift or advancement."

In this case, plaintiff's own testimony is that he

caused the title to this property to be placed in the name of his wife in order that she might have a home in case anything should happen to him. In another place in the testimony he says that it was intended as a home for himself and wife. No other conclusion can be drawn from this testimony than that it was not intended by the plaintiff that his wife should hold this property in trust for him, but that she should hold it in her own right, in order that she might have a home in case he should die, or, as he says, in case "anything should happen" to him. This is not only a valid gift, but such gifts are encouraged by the law, in order to enable a husband to provide for his wife in case misfortune should overtake him. And it has been the policy of the courts to uphold conveyances to the wife by the husband upon grounds of public policy. In the case *Thomas v. Mackey,* 3 Colo. 390, it was said: "A voluntary conveyance from husband to wife is not *per se* fraudulent. In obedience to the dictates of humanity and the voice of reason, the husband may, and ought, in prosperous times, if it can be done without imperiling his creditors, to put his wife beyond the reach of want, when old age shall overtake her, and when he, perchance, through some misfortune in business, may have lost all his property."

It is not contended by the plaintiff that there was any agreement between him and his wife that he should have any interest in the property, or that it should be occupied by them jointly. His statement is that, when he paid for the property and caused it to be conveyed to her, it was intended by him that it should be her home. This cannot be regarded as creating a trust, and we must hold that, when Berrier caused the property to be conveyed to his wife, it was intended by him as a gift to her, and that she had absolute control and dominion over it.

Conceding that the cases cited correctly state the rule, counsel say that the record does not establish the fact that the defendant Ellen Berrier is the wife of the plaintiff, and direct attention to the statement of one of the witnesses that Mrs. Berrier had said to the plaintiff, "You know you are not my husband and never was," and that she also stated that she had no husband. But for the purposes of this case the testimony is sufficient to warrant us in deciding the controversy upon the theory that the plaintiff was, at the time of the transaction in question, the husband of the defendant Berrier. The plaintiff and defendant Berrier were living together. She and the plaintiff have the same surname. He referred to her as "Mrs. Berrier" when he directed the bond for a deed to be executed in her name. In his testimony he repeatedly referred to her as Mrs. Berrier, and on one occasion, at least, he referred to her as his wife. His purchase of the property in her name in order that she might have a home in case he should die, is a circumstance worthy of consideration in determining their relationship. Their conduct was such as to lead anyone to believe that they were husband and wife, and we shall presume that they were honest people, and that they were not sustaining a relationship violative of the law.

The brief of counsel for appellee is devoted almost entirely to a discussion of the testimony relating to the transaction between Mrs. Berrier and the defendant Foster. The transaction between these two defendants bears evidence of bad faith, and appears to be tainted with suspicious circumstances and to bear many of the *indicia* of fraud, which would result, probably, in setting the conveyance aside at the instance of the creditors of Mrs. Berrier, or at the instance of the plaintiff if he had any legal or equitable interest in the property; but as creditors

are not complaining, and as the plaintiff has no interest in the property, the nature of the transaction between the two defendants cannot be investigated in this proceeding.

The judgment will be reversed.          *Reversed.*

Mr. JUSTICE CASWELL and Mr. JUSTICE MAXWELL concur.