## Broder *v.* Water Company.

A., a water and mining company, constructed in 1853, over public land in California, a canal, and its right, which it has ever since exercised, to use the water for mining, agricultural, and other purposes has been uniformly recognized by the local customs, laws, and the decisions of the courts of that State.   B. is now the owner of lands through which the canal runs.   He acquired title to one portion of them by a pre-emption settlement made after the passage of the act of July 26, 1866 (14 Stat. 251), and to another portion under the grant made to the Central Pacific Railroad Company, by the amended Pacific Railroad Act of July 2, 1864.   13 Stat. 356.   In his suit against A., B. seeks the recovery of damages, and also prays that the canal may be declared a nuisance, and as such abated.   *Held,* 1. That B.'s title under the pre-emption laws is subject to A.'s right of way under said act of 1866.   2. That said act expressly confirmed to the owners of such canals a pre-existing right, which the government had by its policy theretofore recognized.   A. had, therefore, within the meaning of. said act of 1864, a "lawful claim" to the continued use of the water, which was not defeated or impaired by the grant of the lands to said railroad company.

Error to the Supreme Court of the State of California.

The facts of the case and the legislation bearing upon them are set out in the opinion of the court.

*Mr. John H. McKune* for the plaintiff in error.

*Mr. A. P. Catlin*, *Mr. S. Shellabarger*, and *Mr. J. M. Wilson*, *contra*.

Mr. Justice Miller delivered the opinion of the court.

The Natoma Water and Mining Company owns a canal for conducting water and distributing the same for mining, agricultural, and other uses, which is some fifteen miles long.   It was completed in the year 1853, and since then has been in constant and successful operation under the control and in the possession of the company.   Its cost was about $200,000.   The court of the first instance on the trial of this cause found also as a fact that the canal and branches have, ever since their construction, been uniformly acknowledged and recognized by the local customs, laws, and the decisions of the courts of the State of California, in which they lie, and that the land covered by them is indispensable to their use.   At the time they were finished, and for many years after, in fact up to the passage of the Pacific Railroad Acts of 1862 and 1864, the land

through which they ran was the public property of the United States. A portion of it is included in the grant made by that act to what has since, by change of name and consolidation of corporate franchises, become the Central Pacific Railroad Company, and the plaintiff in error, by proper conveyance from said company, has become the owner of it. A small part of it is traversed by the canal, and he brought this action in the proper court of that State against said water and mining company, to have the canal declared a nuisance and abated, and to recover $12,000 damages on account of its maintenance on his land.

The case was submitted to the court, which found the facts we have stated, and others that will be referred to.

The inception of the title of plaintiff to the land described in his petition, other than that derived from the railroad company, was a declaratory statement for pre-emption, filed Aug. 6, 1866, by himself for one tract, and a similar statement filed Sept. 14, 1866, by his brother, Jacob Broder, for another. But prior to either of these dates, to wit, on the 26th of July of the same year, Congress enacted a law, the purpose of which was to deal with the rights of miners who had theretofore, without objection, and with the tacit encouragement of the United States, discovered, developed, and mined the public lands.   14 Stat. 251.   The ninth section of that act contains this declaration: "That wherever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals, for the purposes aforesaid, is hereby acknowledged and confirmed." p. 253.

As to the canal of the defendant, so far as it ran at that date through the land of the United States, this act was an unequivocal grant of the right of way, if it was no more. As the plaintiff's right to the lands patented to him and his brother commenced subsequently to this statute, he took the title subject to this right of way, and cannot now disturb it.

In reference to his lands held under conveyance from the railroad company, it might be a question of some difficulty

whether the right was so far vested in that company before the passage of this act of 1866, that the latter would be ineffectual as regards these lands. But we do not think that the defendant is under the necessity of relying on that statute.

It is the established doctrine of this court that rights of miners, who had taken possession of mines and worked and developed them, and the rights of persons who had constructed canals and ditches to be used in mining operations and for purposes of agricultural irrigation, in the region where such artificial use of the water was an absolute necessity, are rights which the government had, by its conduct, recognized and encouraged and was bound to protect, before the passage of the act of 1866. We are of opinion that the section of the act which we have quoted was rather a voluntary *recognition of a pre-existing right of possession*, constituting a valid claim to its continued use, than the establishment of a new one. This subject has so recently received our attention, and the grounds on which this construction rests are so well set forth in the following cases, that they will be relied on without further argument: *Atchison v. Peterson*, 20 Wall. 507; *Basey v. Gallagher*, id. 670; *Forbes v. Gracey*, 94 U. S. 762; *Jennison v. Kirk*, 98 id. 453.

We turn now to the act of July 2, 1864 (13 Stat. 356), which makes the final grant to the Pacific railroad companies, the acceptance of which by the companies bound them to its terms, and we find in sect 4, which enlarges the grant of lands made by the act of 1862, this clause of reservation from the general terms of the grant: " Any lands granted by this act, or the act to which this is an amendment, shall not defeat or impair any pre-emption, homestead, swamp-land, *or other lawful claim*, nor include any government reservation or mineral lands, or the improvements of any *bona fide* settler on any lands returned or denominated as mineral lands, and the timber necessary to support his said improvements as a miner or agriculturist." p. 358.

We have had occasion to construe a very common clause of reservation in grants to other railroad companies, and in aid of other works of internal improvements, and in all of them we have done so in the light of the general principle that Congress, in the act of making these donations, could not be supposed to

exercise its liberality at the expense of pre-existing rights, which, though imperfect, were still meritorious, and had just claims to legislative protection.        See . Wolcott v. *DesMoines Company*, 5 Wall. 681; *Williams* v. *Baker*, 17 id. 144; *Leavenworth, Lawrence, & Galveston Railroad Co.* v. *United States*, 92 U. S. 733.

In construing the grant to the Pacific railroad companies this principle is eminently applicable. The lands were vastly greater in extent than those embraced in any previous grant, and surrounded by much more varied circumstances. The number and diversified character of the interests which might be affected largely exceeded any with which Congress had theretofore dealt.

Hence we have in the clause of reservation a much more liberal and extended protection of pre-existing rights than in the reservation clause which had become a formula in previous grants.

Not only are prior reservations made by the government, and rights of pre-emption excepted, but the improvements of *bona fide* settlers on land returned or denominated mineral lands, and the timber necessary to support the miners' improvements, and *any other lawful claim*, are unaffected by the grant. Of course, this means any honest claim evidenced by improvements or other acts of possession.

The defendant had been in possession of the claim in question for twelve years when this act was passed, and had expended $200,000 upon it. It was of great utility, nay necessity, to a large agricultural and mining interest, and we cannot doubt that it was of the class which this section declared should not be defeated by the grant which Congress was then making.

As the judgment of the Supreme Court of California was based on this principle, it is

*Affirmed.*