## COFFIN *et al. v.* THE LEFT HAND DITCH CO.

*(Supreme Court of Colorado, Spring Term, 1883—Appeal from the District Court of Boulder County.)*

1. WATER RIGHTS IN COLORADO—NOT GOVERNED BY COMMON LAW RULES AS TO RIPARIAN PROPRIETORSHIP. The doctrine of priority of right to water by priority of appropriation has existed in Colorado from the earliest appropriations of water within the boundaries of the State, and not simply since 1876, when the constitution was adopted. The right,

from the very nature of the case, existed prior to any legislation on the subject. The common law rule is not applicable to Colorado.

2. SAME—PROTECTION OF. The right of one who by prior appropriation has secured the beneficial use of water, is entitled to protection as well after patent, to a third party, of the land over which the natural stream flows, as when such land is part of the public domain, whether or not the water be mentioned in or expressly excepted from the grant. The act of Congress protecting in patents such rights "was rather a voluntary recognition of a pre-existing right of possession, constituting a valid claim to its continued use, than the establishment of a new one."

3. SAME—LEGISLATION HAD IN VIEW OF THESE RIGHTS BY APPROPRIATION. All the legislation on the subject in Colorado, including the acts of 1861, 1862 and 1864, had in view the existence and protection of rights secured by prior appropriation.

4. SAME—RIGHT NOT DEPENDENT UPON THE LOCUS OF USE. The right of water acquired by prior appropriation is not in any way dependent upon the *locus* of its application to the beneficial use designed. That such prior appropriation diverts the water from one stream to another, across the natural water shed, does not affect his rights. The acts of 1861 and 1862 do not conflict with this view.

HELM, J. Appellee, who was plaintiff below, claims to be the owner of certain water by virtue of an appropriation thereof, from the south fork of the St. Vrain creek. It appears that such water, after its diversion, is carried by means of a ditch to the James creek, and thence along the bed of the same to Left Hand creek, where it is again diverted by lateral ditches and used to irrigate lands adjacent to the last named stream. Appellants are the owners of lands lying on the margin and in the neighborhood of the St. Vrain, below the mouth of said south fork thereof, and naturally irrigated therefrom.

In 1879 there was not a sufficient quantity of water in the St. Vrain to supply the ditch of appellees and also irrigate the said lands of appellants. A portion of appellees' dam was torn out and its diversion of water thereby seriously interfered with by appellants. The action is brought for damages arising from the trespass, and for injunctive relief to prevent repetitions thereof in the future.

The answer of appellants, who were defendants below, is separated into six divisions:

*First*—A specific denial of all the material allegations of the complaint.

*Second*—Allegations concerning an agreement made at the date of the construction of appellees' ditch; by this agreement the parties constructing such ditch were to refrain from the diversion of water therethrough when the quantity in the St. Vrain was only sufficient to supply the settlers thereon.

*Third, fourth, fifth* and *sixth*, are separate answers by individual defendants, setting up a right to the water diverted, by virtue of ownership of lands along the St. Vrain, and in some instances also by appropriations of water therefrom. But it nowhere appears by sufficient averment that such appropriations of defendants making the same were actually made prior to the diversion of water through appellees' ditch.

Demurrers were sustained to all of the above defenses or answers, except the first, and exceptions to the rulings duly preserved; trial was had before a jury upon the issues made by the complaint and answer as it then remained, and verdict and judgment given for appellees.

Such recovery was confined, however, to damages for injury to the dam alone, and did not extend to those, if any there were, resulting from the loss of water.

We do not think the Court erred in its ruling upon the demurrers, and we believe the verdict and judgment sustained by the pleadings and evidence.

Were we to accept appellants' views upon the subject of water rights in this State, it would yet be doubtful if we could justify the trespass. And if the agreement were actually made as stated in the second defense, that fact would not excuse their act in forcibly destroying appellees' dam, without notice or warning. It is sufficient upon this subject for us to say, that, even if such agreement were legal and binding, and included subsequent settlers on the St. Vrain, yet appellee was entitled to notice of the insufficiency of water to supply the demands of appellants; it might then, perhaps, have complied with the agreement without serious injury to its property.

But two important questions upon the subject of water rights are fairly presented by the record, and we cannot well avoid resting our decision upon them.

It is contended by counsel for appellants that the common

61

law principles of riparian proprietorship prevailed in Colorado until 1876, and that the doctrine of priority of right to water by priority of appropriation thereof, was first recognized and adopted in the constitution. But we think the latter doctrine has existed from the date of the earliest appropriations of water within the boundaries of the State. The climate is dry, and the soil, when moistened only by the usual rainfall, is arid and unproductive; except in a few favored sections, artificial irrigation for agriculture is an absolute necessity. Water in the various streams thus acquires a value unknown in moister climates. Instead of being a mere incident to the soil, it rises, when appropriated, to the dignity of a distinct usufructuary estate, or right of property. It has always been the policy of the National as well as the Territorial and State governments to encourage the diversion and use of water in this country for agriculture; and vast expenditures of time and money have been made in reclaiming and fertilizing by irrigation portions of our unproductive territory. Homes have been built and permanent improvements made; the soil has been cultivated, and thousands of acres have been rendered immensely valuable, with the understanding that appropriations of water would be protected. Deny the doctrine of priority or superiority of right by priority of appropriation, and a great part of the value of all this property is at once destroyed.

The right to water, in this country, by priority of appropriation thereof, we think it is and has always been the duty of the National and State governments to protect. The right itself, and the obligation to protect it, existed prior to legislation on the subject of irrigation. It is entitled to protection as well after patent, to a third party, of the land over which the natural stream flows, as when such land is a part of the public domain, and it is immaterial whether or not it be mentioned in the patent and expressly excluded from the grant.

The act of Congress protecting in patents such right in water appropriated, when recognized by local customs and laws, "was rather a voluntary recognition of a pre-existing right of possession, constituting a valid claim to its continued use, than the establishment of a new one." *Broder* v. *Notoma W. & M. Co.*, 11 Otto, 274.

We conclude, then, that the common law doctrine giving the riparian owner a right to the flow of water in its natural channel upon and over his lands, even though he make no beneficial use thereof, is inapplicable to Colorado; imperative necessity, unknown in the countries which gave it birth, compels the recognition of another doctrine in conflict therewith. And we hold that, in the absence of express statutes to the contrary, the first appropriator of water from a natural stream, for a beneficial purpose, has, with the qualifications contained in the constitution, a prior right thereto to the extent of such appropriation. See *Schilling* v. *Rominger*, 4 Colo., 103.

The Territorial Legislature, in 1864, expressly recognizes the doctrine. It says:

" Nor shall the water of any stream be diverted from its original channel to the detriment of any miner, millmen or others along the line of said stream, *who may have a priority of right*, and there shall be at all times left sufficient water in said stream for the use of miners and agriculturists along said stream." Session Laws, 1864, p. 58, Sec. 32.

The priority of right mentioned in this section is acquired by priority of appropriation; and the provision declares that appropriations of water shall be subordinate to the use thereof by prior appropriators. This provision remained in force until the adoption of the Constitution; it was repealed in 1868, but the repealing act re-enacted it *verbatim.*

But the rights of appellee were acquired in the first place under the acts of 1861 and 1862; and counsel for appellants urge, with no little skill and plausibility, that these statutes are in conflict with our conclusion that priority of right is acquired by priority of appropriation. The only provision, however, which can be construed as referring to this subject, is section 4, on page 68, Sess. Laws of 1861; this section provides for the appointment of commissioners, in times of scarcity, to apportion the water of the stream "in a just and equitable proportion," to the best interests of all parties concerned, *"with a due regard for the legal rights of all."* What is meant by the concluding phrases of the foregoing statute? What are the legal rights for which the commissioners are enjoined to have a "due regard?" Why this additional limitation upon the powers of such commissioners?

It seems to us a reasonable inference that these phrases had reference to the rights acquired by priority of appropriation. This view is sustained by the universal respect shown at the time said statute was adopted, and subsequently by each person for the prior appropriations of others; and the corresponding customs existing among settlers with reference thereto. This construction does not, in our judgment, detract from the force or effect of the statute. It was the duty of the commissioners under it to guard against extravagance and waste, and to so divide and distribute the water as most economically to supply all of the earlier appropriators thereof, according to their respective appropriations and necessities, to the extent of the amount remaining in the stream.

It appears from the record that the patent under which appellant, George W. Coffin, holds title, was issued prior to the act of Congress of 1866 hereinbefore mentioned. That it contained no reservation or exception of vested water rights, and conveyed to Coffin, through his grantor, the absolute title in fee simple to his lands together with all incidents and appurtenances thereunto belonging, and it is claimed that, therefore, the doctrine of priority of right by appropriation cannot, at least, apply to him. We have already declared that water appropriated for a beneficial purpose is, in this country, not necessarily an appurtenance to the soil through which the stream supplying the same naturally flows; if appropriated by one prior to the patenting of such soil by another, it is a vested right entitled to protection, though not mentioned in the patent. But we are relieved from any extended consideration of this subject by the decision in *Broder* v. *Notoma W. & M. Co., supra.*

It is urged, however, that even if the doctrine of priority or superiority of right by priority of appropriation be conceded, appellee in this case is not benefitted thereby. Appellants claim that they have a better right to the water, because their lands lie along the margin and in the neighborhood of the St. Vrain. They assert that, as against them, appellee's diversion of said water to irrigate lands adjacent to Left Hand creek, though prior in time, is unlawful.

In the absence of legislation to the contrary, we think that

the right to water acquired by priority of appropriation thereof, is not in any way dependent upon the *locus* of its application to the beneficial* use designed.    And the disastrous consequences of our adoption of the rule contended for, forbid our giving such a construction to the statutes as will concede the same, if they will properly bear a more reasonable and equitable one.

The doctrine of priority of right by priority of appropriation for agriculture is evoked, as we have seen, by the imperative necessity for artificial irrigation of the soil.    And it would be an ungenerous and inequitable rule that would deprive one of its benefit simply because he has, by large expenditure of time and money, carried the water from one stream over an intervening water shed, and cultivated land in the valley of another.    It might be utterly impossible, owing to the topography of the country, to get water upon his farm from the adjacent stream; or, if possible, it might be impracticable on account of the distance from the point where the diversion must take place, and the attendant expense; or the quantity of water in such stream might be entirely insufficient to supply his wants.  It sometimes happens that the most fertile soil is found along the margin or in the neighborhood of the small rivulet, and sandy and barren land beside the larger stream; to apply the rule contended for would prevent the useful and profitable cultivation of the productive soil, and sanction the waste of water upon the more sterile lands.    It would have enabled a party to locate upon a stream in 1875, and destroy the value of thousands of acres, and the improvements thereon, in adjoining valleys, possessed and cultivated for the preceding decade.    Under the principle contended for, a party owning land ten miles from the stream, but in the valley thereof, might deprive a prior appropriator of the water diverted therefrom, whose lands are within a thousand yards, but just beyond an intervening divide.

We cannot believe that any legislative body within the Territory or State of Colorado ever *intended* these consequences to flow from a statute enacted.    Yet two sections are relied upon by counsel as producing them.    These sections are as follows:

"All persons who claim, own or hold a possessory right or title to any land or parcel of land within the boundary of Colorado Territory,       *       *       *       when those claims are on the bank, margin or neighborhood of any stream of water, creek or river, shall be entitled to the use of the water of said stream, creek or river, for the purpose of irrigating, and making said claims available, to the full extent of the soil, for agricultural purposes." Session Laws, 1861, p. 67, Sec. 1.

" Nor shall the water of any stream be diverted from its original channel to the detriment of any miner, millmen or others along the line of said stream, and there shall be at all times left sufficient water in said stream for the use of miners and farmers along said stream." Latter part of Sec. 13, p. 48, Sess. Laws 1862.

The two statutory provisions above quoted must, for the purposes of this discussion, be considered together. The phrase "along said stream" in the latter is equally comprehensive, as to extent of territory, with the expression "on the bank, margin or neighborhood," used in the former. And both include all lands in the immediate valley of the stream. The latter provision sanctions the diversion of water from one stream to irrigate lands adjacent to another, provided such diversion is not to the "detriment" of parties along the line of the stream from which the water is taken. If there is any conflict between the statutes in this respect, the latter, of course, must prevail. We think that the "use" and "detriment" spoken of are a use existing at the time of the diversion, and a detriment or injury immediately resulting therefrom. We do not believe that the Legislature intended to prohibit the diversion of water to the "detriment" of parties who might at some future period conclude to settle upon the stream; nor do we think that they were legislating with a view to preserving in said stream sufficient water for the "use" of settlers who might never come, and, consequently, never have use therefor.

But "detriment" at the time of diversion could only exist where the water diverted had been previously appropriated or used; if there had been no previous appropriation or use thereof, there could be no present injury or "*detriment.*"

Our conclusion above as to the intent of the Legislature is supported by the fact that the succeeding Assembly, in 1864, hastened to insert into the latter statute, without other change

or amendment, the clause, *"who have a priority of right,"* in connection with the idea of *"detriment"* to adjacent owners. This amendment of the statute was simply the acknowledgment by the Legislature of a doctrine already existing, under which rights had accrued that were entitled to protection. In the language of Mr. Justice Miller, above quoted, upon a different branch of the same subject, it "was rather a voluntary recognition of a pre-existing right, constituting a valid claim, than the creation of a new one."

Error is assigned upon alleged defects in the proof of appellee's incorporation.

But this is an action of trespass; the defendants below were, according to the verdict of the jury, and according to the views herein expressed, wrong-doers; and, considering the nature of the action, we think the proof of incorporation sufficient.

The judgment of the Court below will be affirmed.

*Affirmed.*

*Messrs. Carr* and *Kime*, for appellants.

*Richard H. Whiteley*, for appellees.