[No. 2256]

## J. SHEEHAN AND JOHN G. TAYLOR, COPARTNERS, DOING BUSINESS UNDER THE NAME AND STYLE OF TAYLOR & SHEEHAN, RESPONDENTS, *v.* S. B. KASPER, APPELLANT.

[165 Pac. 632]

1. WATERS AND WATERCOURSES—CANAL—RESTRAINING OF DESTRUCTION.

   To entitle plaintiffs to judgment restraining defendant from destroying a canal, ditch, and power line, the canal must have had a valid existence, must have been owned by plaintiffs, who must have acquired a license to construct, maintain, and operate the branch ditch and power line irrevocable at defendant's will, and defendant must have been threatening to fill in and destroy the ditch and power line.

2. WATERS AND WATERCOURSES—CONVEYANCE OF RIGHT OF WAY.

   The federal government, having passed title to plaintiff to a right of way for a canal by statute, could convey no title thereto when it conveyed title to a mill site; and the patentee of the land embraced in the mill site took title subject to the right of way for the canal, and the purchaser of the mill site acquired no greater right.

3. CORPORATIONS—RATIFICATION OF ACTS OF AGENT.

   The unauthorized act of the managing director of a company in granting a license became effectual when ratified by the company.

4. WATERS AND WATERCOURSES—LICENSES—PRESUMPTION OF EXISTENCE.

   In suit to restrain defendant from destroying a canal, ditch, and power line, where the superintendent of the exploration company from which plaintiffs claimed a license to construct the ditch and power line knew of the construction from the beginning of operations, and no protest was made, the court will presume that plaintiffs had a license from the exploration company.

5. LICENSES—PATROL LICENSE WITHOUT CONSIDERATION—IRREVOCA-
BLE CHARACTER.

An executed parol license, though without consideration, is
irrevocable.

6. WATERS AND WATERCOURSES—MILL SITE—BONA FIDE PURCHASER
—NOTICE.

Where a firm was in open and notorious possession and
enjoyment of a ditch and power line for three or four years
before defendant, who had lived in the vicinity of the property
off and on for ten years, and continuously for one year, bought
a mill site through which the right of way for the ditch passed,
the firm's possession was sufficient to put defendant on notice.

APPEAL from Sixth Judicial District Court, Humboldt
County; *E. A. Ducker,* Judge.

Action by J. Sheehan and John G. Taylor, copartners,
doing business under the name and style of Taylor &
Sheehan, against S. B. Kasper. From judgment for
plaintiffs, and an order denying his motion for a new
trial, defendant appeals. **Affirmed.**

*Salter & Robins,* for Appellant:

In this case, there having been no express oral consent
nor written consent given to the respondents or their
grantors for the building of the ditch in the first instance,
their right to maintain the ditch was merely a license,
and not an irrevocable license or easement. Being such
a license, it was personal, and not an irrevocable right in
and to the freehold, and could not pass from the licensees,
to whom the license was originally given, to their suc-
cessors. (*Ewing* v. *Rhea,* 62 Pac. 790; *Levery* v. *Arnold,*
36 Or. 84, 57 Pac. 906; *Hallock* v. *Suitor,* 60 Pac. 384.)

It may be conceded that a mere naked license, by
acquiescence, may be created in favor of a person, or the
public, by his or its use of real property, or an easement
therein without the owner's objection; but a license of
that character, unless enjoyed for such a time as to bar
the statute of limitations, may be revoked at any time by
the licensor. (*Carskaddon* v. *Mills,* 5 Ind. App. 22, 31
N. E. 559; *Parrish* v. *Kaspare,* 109 Ind. 22; *Simpson* v.
*Wright,* 21 Ill. App. 67; *Pitzman* v. *Boyce,* 111 Mo. 387,
19 S. W. 1104.)

The license is revocable, regardless of whether it might be called a license by acquiescence or not, and at the will of the licensor, regardless of whatever expenditure the licensee may have made, provided the licensee has reasonable notice and opportunity to remove his fixture; nor does the case involve in any way an estoppel *in pais* against the licensor, or render him liable in an action for damages. (*House* v. *Barman*, 81 Pac. 48; *Great Falls W. W. Co.* v. *Great Northern Ry. Co.*, 21 Mont. 487, 54 Pac. 963; *Yeager* v. *Woodruff*, 17 Utah, 361, 53 Pac. 1045.)

A mere license is nothing more than a personal privilege and is revocable at the pleasure of the licensor. A license is founded in personal confidence, a mere personal privilege, extending only to the person to whom it is given, and is therefore not assignable. An attempted assignment terminates the privilege. (25 Cyc. 644–646, notes 39–44.)

The assumed consent supposed to have been given by the Glasgow and Western Exploration Company, through its general manager, was *ultra vires*, and did not bind the corporation. The managing agent of a corporation has no incidental or implied power, by virtue of his office, to transfer the real estate of the corporation by deed. (*Stow* v. *Wise*, 7 Conn. 214, 18 Am. Dec. 99.) A general agent of a corporation, even though his authority in this respect is not limited either by common usage or the by-laws of the company, has no power as such to convey the real estate of the company, but special power is necessary. (*Leggett* v. *New Jersey Mfg. Co.*, 1 N. J. Eq. 541, 23 Am. Dec. 728.) The general agent of a corporation cannot make a lease of its lands without special authority. (*Gillis* v. *Bailey*, 17 N. H. 18.)

The owner of a dominant estate in an easement cannot in any way enlarge his easement or put it to uses for which it was not originally intended, and thus impose additional burdens upon the owner of the servient estate. Any action on the part of the owner of the dominant estate which increased the burdens upon the servient estate will operate as a discharge of the servient estate

from the burdens of the easement. (*Blanchard* v. *Burgess,* 2 A. & E. 258; *Bullen* v. *Runnells,* 2 N. H. 255; *Jackway* v. *Johnson,* 27 N. J. Eq. 552.)

If the condition and character of the dominant estate are substantially altered, the right of way cannot be used for new purposes required by the altered condition of the property, and imposing a greater burden upon the servient estate. (*Parks* v. *Bishop,* 120 Mass. 340, 21 Am. Rep. 519.) The owner of a right of way over the land of another is limited in its use to the terms of the grant from which the way is derived. (*Chandler* v. *Goodridge,* 23 Me. 78; *Abbott* v. *Butler,* 59 N. H. 317; *Wells* v. *Tollman,* 156 N. Y. 636, 51 N. E. 271.) If the owner of an easement exceeds his rights, either in the manner or the extent of its use, or if he enters upon or uses the land of the servient estate for any unathorized purpose, he is guilty of a trespass, although no actual damage has been sustained. (*Kaler* v. *Beaman,* 49 Me. 207; *Bryn Mawr Hotel Co.* v. *Baldwin,* 12 Mont. 145; *Dixien* v. *Clough,* 24 Wend. 188; *Appleton* v. *Fullerton,* 1 Gray, 186; *Ganly* v. *Looney,* 14 Allen, 40.)

*Callahan & Brandon,* for Respondents:

The principal contention made by appellant is to the effect that there is no such a thing known to the principles of the law as a parol irrevocable license, arguing that on a proper construction of the law the lower court was in error in finding that the license in the case at bar was irrevocable, because a mere parol license cannot become irrevocable, even regardless of improvements made by the licensee in reliance thereon. The courts are about equally divided on this point. In 25 Cyc. p. 646, note 46, and cases cited thereunder, it is held that an executed oral license with expenditure of money or labor in reliance thereon makes the oral license irrevocable. On page 646 of the same authority, note 48, there are a large number of cases cited which hold a contrary doctrine. (See, also, 18 Am. & Eng. Ency. Law, 2d ed. p. 1145, note 8, and p. 1146, same authority, note 7, to the same effect.)

It will be noted, however, from these authorities that the great majority of the western states have decided the issue in favor of the oral irrevocable license, particularly the State of Nevada, in the case of *Lee* v. *McLeod*, 12 Nev. 280, in which it is said: "A parol license to erect a dam upon another's land for the purpose of running a flouring mill is irrevocable, if the party to whom the license is given has executed it by erecting the mill or otherwise expending money upon the faith of the license." The decision in the case of *Lee* v. *McLeod* has become the settled policy in this state in so far as the principles therein laid down are concerned.

By the Court, COLEMAN, J.:

Plaintiffs brought suit to restrain the defendant from destroying a certain canal, ditch, and power line. From a judgment and decree as prayed, and from an order denying a motion for a new trial, an appeal is taken.

Plaintiffs contend that they were, and at the time the suit was instituted, and for about fifty years prior thereto they and their predecessors in interest had been, the owners of land in possession of a large tract of land known as the Taylor & Sheehan Ranch, and a certain canal commonly known and called "the Humboldt Canal," together with a strip of land 100 feet in width, extending 50 feet on each side of the center line of said canal, all situated in Humboldt County, Nevada, during which time they had paid all taxes assessed thereon; that the Glasgow Exploration Company was, in the year 1910, the owner of a tract of land consisting of about 179 acres, which it acquired as a mill site, and through which "the Humboldt Canal" flowed, and that plaintiffs acquired from said exploration company an irrevocable license to construct, maintain, and operate a certain branch ditch and power line over, upon, and across said mill site, which they constructed at a cost of about $45,000. That said Humboldt Canal, ditch, and power line were being used to divert certain waters of the Humboldt River that had been appropriated by plaintiffs

with which to irrigate the growing crops on the land so owned by them, of the alleged value of $30,000; that thereafter, and in 1915, and while plaintiffs were in the possession of all the property mentioned, the defendant purchased said mill site and took a quitclaim deed thereto; that defendant threatened to fill in and destroy said canal and ditch and tear down and destroy said power line, and if not restrained would fill in and destroy the same, to the damage of plaintiffs; that defendant is insolvent and unable to respond to plaintiffs in damages. They also contend that they had the right to use "the Humboldt Canal" through which to divert the waters of the Humboldt River for irrigation purposes.

Defendant contests every contention of the plaintiffs, except the existence of their partnership, their ownership of the Taylor & Sheehan ranch, and their right to a portion of the waters of the Humboldt River for the irrigation of their lands.

1. To enable the trial court to render judgment in favor of plaintiffs as prayed, it was necessary that it find, in addition to the admitted allegations of the complaint, that "the Humboldt Canal" had a valid existence, and that it was owned by the plaintiffs; that the plaintiffs acquired a license to construct, maintain, and operate the branch ditch and power line; that the same was not revocable at the will of defendant; and that the defendant was threatening to fill in and destroy said ditch and power line.

The learned judge before whom the case was tried in the district court filed a written opinion in the case, in which he says that evidence was received to the effect that the Humboldt Canal was started somewhere about the year 1862; that a right of way, as claimed by plaintiffs, was granted by the government to the Humboldt Canal Company for irrigation, and possibly other purposes, and makes his finding accordingly. As we read the record, the witness who testified concerning the grant intended to convey the idea that there was a

special act of Congress granting the canal company a right of way, but no such act was offered in evidence or called to the attention of this or the trial court.

The evidence clearly sustains the findings and conclusions of the court; in fact, we do not think this finding is seriously questioned. However, the probability is that there never was a special act of Congress granting to any one the canal in question. It is more likely that the right of way over the public domain for the canal was confirmed in the owners thereof under the act of Congress approved July 26, 1866, which provides that:

"Whenever, by priority of possession, rights to the use of water for mining, agriculture, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decision of courts, the possessors and owners of such vested rights shall be maintained and protected in the same." (U. S. Rev. Stats. 2339; U. S. Comp. Stats. 1916, sec. 4647.)

2. But no matter whether the right of way for the canal became vested under a specific grant or was confirmed under that portion of the act of Congress quoted, we are clearly of the opinion that the contention of appellant that he acquired title to that portion of the canal which lies within the "mill site" under his deed from the exploration company is unfounded. The government, having clearly passed title to the right of way for the canal, could convey no title thereto when it conveyed title to the mill site. The patentee to the land embraced in the mill site took title subject to the right of way for the canal, and the defendant could and did acquire no better or greater right. (*Broder* v. *Water Co.,* 101 U. S. 274, 25 L. Ed. 790; *Coffin* v. *Left Hand Ditch Co.,* 6 Colo. 443; *Carson* v. *Gentner,* 33 Or. 512, 52 Pac. 506, 43 L. R. A. 130; *Osgood* v. *El Dorado Water Co.,* 56 Cal. 571–581.)

We come now to the question of the license from the exploration company for the right of way for the branch

ditch and power line. Mr. Taylor, one of the plaintiffs, testified concerning a conversation which he had with the managing director of the company, who was in actual charge of all of the company's affairs in 1910, when his firm was Taylor & Edson, at which time that official granted permission to his firm for the construction of certain works across the mill site, to be used in conducting the water for irrigation purposes. No particular line was contemplated or designated in the conversation between Taylor and the manager of the company for the construction of the works; the only restriction which was imposed being that the then existing plant and railroad should in no way be impaired or interfered with. Thereafter Sheehan purchased the interest of Edson in the then partnership of Taylor & Edson, and the firm became Taylor & Sheehan, the plaintiffs. After Sheehan entered the firm, the plan of irrigating the land which is now in existance was adopted.

3. It is contended by appellant that there never was a license granted to either the firm of Taylor & Edson or Taylor & Sheehan, and that if such a license was granted to Taylor & Edson it was forfeited by Edson's sale to Sheehan; and that if, in any event, a license was granted, it was revocable, and that he had exercised the right of revocation. Appellant urges that the managing director of the exploration company had no power to grant a license. We do not deem it necessary that this question be determined, for the reason that, conceding that his action in that connection was in excess of his authority, we are of the view that the company ratified his action.

4. As to the point that the sale by Edson of his interest in the partnership to Sheehan operated to cancel the license, we need only to say that under the facts and circumstances of this case the court will presume that that firm had a license from the exploration company. The record shows that the superintendent of the exploration company knew of the construction by

Taylor & Sheehan, at a cost of about $45,000, of their branch ditch and power line and system, from the very beginning of the operations, and that the managing director was upon the premises several times and was told of and saw what was being done, and no protest was made. Subsequent to the construction by the respondent of the works, succeeding representatives of the company went upon the premises, knew of and saw the branch ditch and power line, and no protest was made. Finally, in 1913, one Joseph Ralph appeared upon the scene with a power of attorney, so comprehensive in its terms as to authorize him to do anything that could be done by the company. One of the provisions of that instrument reads as follows:

"To complete or carry out or vary any contracts or engagements which the company has already approved of or agreed to or entered into, either verbally or in writing, without any person or body for the time being concerned being in any way obliged or permitted to require any evidence whatever that the company has either approved of or agreed to or entered into any such contract or agreement; and also to put an end to any contract into which the company may have entered, and if thought proper to enter into a new contract in lieu thereof."

While acting under this power of attorney, Mr. Ralph was upon the property at least six times, in company with the superintendent of the exploration company, and saw and talked with the superintendent of the company about the branch ditch and other works of the respondents. He made no objection to what had been done by the respondents, notwithstanding the fact that they were in possession of and operating the plant. The uncontradicted evidence is that the managing director of the exploration company, at some time after respondents had completed their branch ditch and power line, said their constructing of the same was "all right." The authorities hold that a license may result from approval of acts of the licensee after they are done, as

well as from an express permission granted before they are done. (*Metcalf* v. *Hart,* 3 Wyo. 513, 27 Pac. 900, 905, 31 Pac. 407, 31 Am. St. Rep. 122; *Cumberland Valley Railroad Co.* v. *McLanahan,* 59 Pa. 23–31; *Walter* v. *Post,* 13 N. Y. Super. Ct. 371.)

See, also, *Occum Co.* v. *Sprague,* 35 Conn. 496; *Hickox* v. *Parmelee,* 21 Conn. 99; *Hansen* v. *Farmers' Coop. Cr.,* 106 Iowa, 167, 76 N. W. 652.

5. But appellant contends that, conceding that a parol license was granted to plaintiffs, there was no consideration therefor, and hence it is revocable at his pleasure. In considering this contention, there must be kept in mind the difference between an executed and an executory license. As to the latter class, so far as we know, the authorities are practically unanimous in holding that they may be revoked, but as to an executed parol license the authorities are divided. See 25 Cyc. pp. 646, 647; 17 R. C. L. p. 578; note to *Rerick* v. *Kern,* 16 Am. Dec. 497.

Persuasive arguments can be urged to sustain both views, but the question was settled in this state in the case of *Lee* v. *McLeod,* 12 Nev. 284, contrary to appellant's contention, and no reason has been advanced which inclines us to overrule that case.

It is contended by appellant that he knew nothing of respondents' claim of a license at the time he purchased the mill site, and that consequently he ought to be treated as an innocent purchaser without notice. Appellant had lived in the vicinity of the property off and on for ten years, and continuously for one year. Respondents were in open and notorious possession and enjoyment of the ditch and power line at and for three or four years prior to the time appellant bought the mill site. This court, in *Patchen* v. *Keeley,* 19 Nev. on page 413, 14 Pac. 352, quoting from Judge Story's opinion in *Ricard* v. *Williams,* 7 Wheat. 105, 3 L. Ed. 398, says:

"The law will never construe a possession tortious unless from necessity. On the other hand, it will consider every possession lawful, the commencement and continuance of which is not proved to be wrongful."

See, also, *Bank of Italy* v. *Burns,* 39 Nev. 326, 156 Pac. 932, 159 Pac. 863.

6. The possession of plaintiffs was sufficient to put the defendant on notice.

Perceiving no error in the judgment, it is ordered that it be affirmed.

## ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.