SACRAMENTO GRAZING
ASSOCIATION, INC.,
et al.  Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 04–786C.

United States Court of Federal Claims.

June 30, 2005.

Michael Joseph Van Zandt, McQuaid Bedford & Van Zandt, San Francisco, CA, for plaintiffs.

Kathleen Lennon Doster, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

### RELEVANT FACTS [1]

Plaintiff, Sacramento Grazing Association, Inc. ("SGA"), is a New Mexico incorporated association, the members of which are: James Goss, Frances Goss, Justin Goss, and Brenna Goss (collectively hereinafter "Plaintiffs"). *See* Compl. ¶ 4. In 1989, Plaintiffs began to purchase parcels of land from the Sacramento Cattle Company, including the "cattle, water rights, range rights, grazing rights, forage rights, access rights, and range improvements on the base property, as well as on the appurtenant federally administered grazing allotment, known as the Sacramento Grazing Allotment[.]" *See* Compl. ¶¶ 8–9. The Sacramento Allotment encompasses approximately 111,000 acres of the Lincoln National Forest, located in southeastern New Mexico and is administered by the United

---

1. The relevant facts recited herein were derived from: the May 4, 2004 Complaint ("Compl."); the Government's October 5, 2004 Motion to Partially Dismiss the Complaint or, Alternatively, For Summary Judgment ("Mot. to Dismiss") and Appendix of Exhibits A–G thereto ("Def.Ex. ___"); Plaintiff's November 29, 2004 Opposition ("Pl.Opp.") and Appendix of Exhibits 1–71 thereto ("Pl.Ex. ___"); and the Government's December 9, 2004 Reply ("Gov't Reply").

States Forest Service ("USFS"). *See* Compl. ¶ 8; *see also* Def. Ex. C ¶ 3 (Martinez Decl.).

On November 27, 1989, USFS issued SGA a 10–year term Grazing Permit No. 08–1105 authorizing 553 head of cattle to graze on the Sacramento Allotment, "unless [the Permit terms were] modified by the Forest Service[.]" *See* Def. Ex. A at 1, 2.

In 1997, Plaintiffs completed the purchase of what is now known as the Goss Ranch, consisting of approximately 80 deeded acres in Otero County, New Mexico. *See* Compl. ¶¶ 8–9. On November 23, 1999, the USFS issued SGA Grazing Permit No. 08–1250 for an additional 10 years. *See* Def. Ex. B (Part 2) ¶ 6; *see also* Compl. ¶¶ 8–9, 18. This permit also authorized 553 head of cattle conditional access to graze on the Sacramento Allotment annually from March 1 to February 28, although the permit could be:

> cancelled, in whole or in part, or otherwise modified, at any time during the term to conform with needed changes brought about by law, regulation, Executive order, allotment management plans, land management planning, numbers permitted or seasons of use necessary because of resource conditions, or the lands described otherwise being unavailable for grazing.

Def. Ex. B (Part 1) ¶ 3.

Annual Operating Instructions ("AOI") are the "administering document" for grazing permits. *See* Def. Ex. C. ¶ 10 (Martinez Decl.). Prior to the issuance of an AOI, the District Ranger consults with the permittee to determine the number of cattle, length of grazing season, and allowable utilization levels on forage species. *Id.* at ¶¶ 10–11. The District Ranger's final decision is reflected in a Bill for Collection. *See* Def. Ex. B (Part 2); *see also* Def. Ex. 6 ¶ 11. AOIs are amended as conditions require. *See* Def. Ex. C ¶¶ 6–7, 11 (Martinez Decl.).

On May 8, 2000, the District Ranger amended the 2000 AOI for the Sacramento Allotment to reduce the number of livestock allowed to graze during the summer season from 553 cattle to 428 cattle. *See* Def. Ex. C ¶ 12 (Martinez Decl.). On August 2, 2000, the Acting District Ranger also ordered an additional reduction of 98 cattle because of excessive forage. *Id.*

On September 8, 2000, USFS partially suspended Grazing Permit No. 08–1250 because of SGA's failure to remove livestock, as directed by the Acting District Ranger. *See* Def. Ex. C ¶ 6 (Martinez Decl.). The suspension required that SGA reduce the number of authorized livestock by 40% for a period of two years. *Id.* As discussed herein, SGA appealed this suspension in the United States District Court for the District of New Mexico ("United States District Court").

On October 28, 2003, the District Ranger further reduced the number of cattle authorized to graze during the winter season from 330 cattle to 230 cattle, because of below normal forage production as a result of drought conditions. *Id.* ¶ 13. The 2004–2005 AOI authorized SGA to graze only 230 cattle on the Sacramento Allotment from March 1, 2004 to May 15, 2004 and, thereafter, 275 cattle from May 16, 2004 to February 28, 2005. *Id.* ¶ 9; *see also* Def. Ex. C ¶ 6 (Martinez Decl.); Def. Ex. D.

On December 19, 2003, USFS partially suspended Grazing Permit No. 08–1250 for noncompliance, but withdrew the suspension upon SGA's subsequent agreement to make good faith efforts to comply with the terms and conditions of Grazing Permit No. 08–1250 and applicable AOI. *See* Def. Ex. C ¶ 7 (Martinez Decl.). Although Grazing Permit No. 08–1250 was suspended on these two occasions, it never was cancelled in whole or part. *Id.* ¶¶ 6–8.

### PROCEDURAL BACKGROUND

**A. Proceedings In The United States District Court For The District Of New Mexico.**

On November 20, 2000, SGA filed a First Amended Complaint in the United States District Court asserting claims arising out of a series of administrative decisions by the Department of Agriculture, USFS, the Game Commission of the State of New Mexico, and various agency officials that allegedly adversely impacted SGA's ranching operations. *See Sacramento Grazing Ass'n v. United States,* No. Civ. 00–1240 JP/RHS (D.N.M.

filed Jan. 19, 2001). SGA challenged the USFS's issuance of Grazing Permit No. 08–1250, for excluding Dry and Davis Allotments from the Sacramento Allotment and reducing the number of cattle authorized to graze on the Sacramento Allotment on three occasions. *Id.* SGA also requested that the United States District Court order the New Mexico Game Commission to reduce the number of elk maintained on the Sacramento Allotment. *Id.*

SGA's case was consolidated with Forest Guardians appeal of USFS and the United States Fish and Wildlife Service ("FWS") final administrative decision to issue SGA Grazing Permit No. 08–1250. That action challenged issuance of Grazing Permit No. 08–1250 as a violation of the consultation requirement of the Endangered Species Act, 16 U.S.C. § 1531, *et seq.*; the consistency requirement of the National Forest Management Act, 16 U.S.C. § 1604(i); and the APA, 5 U.S.C. §§ 706(1)-(2)(A).

On June 8, 2001, the United States District Court held that SGA's challenge regarding the Dry and Davis Allotments was moot since the USFS subsequently included them in the Sacramento Allotment, and the claim concerning the USFS's decision to prohibit grazing on these allotments was not ripe since the required Natural Environmental Policy Act review was not completed. *See Forest Guardians v. United States Forest Services,* No. CIV–00–490 JP/RHS, No. CIV–00–1240 JP/RHS (consolidated), slip op. at 56–57 (D.N.M. June 8, 2001). The USFS's decisions to reduce the number of cattle that were authorized to graze on the Sacramento Allotment were affirmed. *Id.* at 63.

**B. Proceedings In The United States Court Of Federal Claims.**

On May 4, 2004, SGA filed a Complaint in the United States Court of Federal Claims with two Causes of Action: a claim for com-

pensation under the Takings Clause of the Fifth Amendment to the United States Constitution; and a claim for compensation, pursuant to 43 U.S.C. § 1752(g).[1] *See* Compl.

The Takings claim alleged that the Government "has taken plaintiffs' rights in water found or originating on federal lands[.]" Compl. ¶ 32 A–E. The 43 U.S.C. § 1752(g) claim alleged that the Government's actions resulted in a *de facto* cancellation of Grazing Permit No. 08–1250 in order to dedicate the land to "a different public use or uses." Compl. ¶ 37; *see also id.* ¶ 38.

The Complaint asked for payment of damages in the following amounts: $3,000,000 for "temporary takings to date;" $4,706,000 for the taking of the Goss Ranch; $331,824 for the taking of SGA's cattle; $2,000,000 for the taking of SGA's water rights; $400,000 for the taking of SGA's forage and grazing allotments; $2,000,000 for "costs and damages sustained as proximate result of defendant's interference with normal ranching operations, including but not limited to, fees for leasing other lands, feed costs, lost opportunity costs, lost profits, loss of good will, acquisitions of livestock, and other capital and non-capital expenses; and [i]nterest[.]" *See* Compl. ¶ 40.

On September 30, 2004, the Government filed an Answer. On October 5, 2004, the Government filed a Motion to Partially Dismiss the Complaint or, Alternatively, for Summary Judgment, together with a supporting Appendix of Exhibits A–G. On November 22, 2004, SGA filed an Opposition, together with the Declaration of Frances Goss, apparently to authenticate a supporting Appendix of Exhibits 1–71. On December 9, 2004, the Government filed a Reply.

**DISCUSSION**

**A. Jurisdiction.**

The Tucker Act, 28 U.S.C. § 1491(a)(1), authorizes the United States Court of Feder-

---

1. 43 U.S.C. 1752(g) provides:

Whenever a permit or lease for grazing domestic livestock is cancelled in whole or in part, in order to devote the lands covered by the permit or lease to another public purpose, including disposal, the permittee or lessee shall receive from the United States a reasonable compensation for the adjusted value, to be determined by the Secretary concerned, of his in-

terest in authorized permanent improvements placed or constructed by the permittee or lessee on lands covered by such permit or lease, but not to exceed the fair market value of the terminated portion of the permittee's or lessee's interest therein. Except in cases of emergency, no permit or lease shall be cancelled under this subsection without two years' prior notification.

al Claims to render judgment and money damages on any claim against the United States based on the United States Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract with the United States. *See United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The United States Supreme Court, however, has held that the Tucker Act does not create any substantive right for monetary damages. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages in order for the court to have jurisdiction. *See Khan v. United States,* 201 F.3d 1375, 1377 (Fed. Cir.2000); *see also Fisher v. United States,* 402 F.3d 1167, 1173–74 (Fed.Cir.2005) (*en banc*) (emphasis in original) (recognizing that *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) articulated a new test that "demands a showing demonstrably lower .... It is enough that a statute creating a Tucker Act right be *reasonably amenable* to the damages ... a *fair inference* will do.").

A claim asserted under the Takings Clause of the United States Constitution "accrues when all events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Boling v. United States,* 220 F.3d 1365, 1370 (Fed.Cir.2000). In an action for a taking of land, "the key date for accrual purposes is the date on which the ... land has been clearly and permanently taken." *Id.* Whether all relevant events have occurred is determined under an objective standard: "a plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue." *Fallini v. United States,* 56 F.3d 1378, 1380 (Fed.Cir.1995) (quoting *Menominee Tribe v. United States,* 726 F.2d 718, 721 (Fed.Cir. 1984), *cert. denied,* 469 U.S. 826, 105 S.Ct. 106, 83 L.Ed.2d 50 (1984)).

The Complaint in this case properly alleges the jurisdiction of the United States Court of Federal Claims. *See* Compl. ¶¶ 1–3.

## B. Standard Of Review.

In ruling on a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal for failure to state a claim under Rule 12(b)(6) "is proper only when a plaintiff can 'prove no set of facts in support of his claim which would entitle him to relief.'" *Adams v. United States,* 391 F.3d 1212, 1218 (Fed.Cir.2004) (quoting *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.2002)); *see also* RCFC 12(b)(6).

## C. The Court's Resolution Of The Government's Motion To Partially Dismiss, Or Alternatively, For Summary Judgment.

### 1. The Complaint's Claim For Compensation Under 43 U.S.C. § 1752(g) Is Not Ripe For Adjudication.

█ If the USFS cancels a permit or lease for grazing domestic livestock to devote the lands covered by the permit or lease to another public purpose, the permittee may recover reasonable compensation from the Government. *See* 43 U.S.C. § 1752(g). Any claim thereunder, however, does not arise unless a cancellation of a permit occurs. *Id.* Although the USFS has suspended SGA's grazing permit for the allotment on two occasions, USFS has not cancelled Grazing Permit No. 08–1250 in whole, or in part, at any time. *See* Def. Ex. C ¶¶ 6, 8 (Martinez Decl.). The Complaint nevertheless asserts that the Government's actions amounted to a "*de facto* cancellation of plaintiff's permit to dedicate the land subject to plaintiff's permit to a different public use or uses." Compl. ¶ 37. The Complaint, however, does not allege facts sufficient to evidence that the time periods of the suspensions were tantamount to a *de facto* cancellation.

As a matter of law, unless there is a cancellation of Grazing Permit No. 08–1250,

SGA's claim for compensation is not ripe for adjudication. *See* 43 U.S.C. § 1752(g). Accordingly, the SGA's Second Cause of Action, set forth in Paragraphs 35–40 of the Complaint, is dismissed, without prejudice.

**2. The Complaint Does Not Provide a "Concise And Direct" Statement As To What Specific Water Rights Are The Basis For The Alleged Takings Claim.**

The Complaint states that at the time Plaintiffs acquired the Goss Ranch:

> [I]t also acquired *rights to water in New Mexico, which rights are appurtenant to said ranch. Among the water rights acquired ... are rights to waters originating in or found in the Sacramento Grazing Allotment.* The water rights were lawfully acquired by plaintiffs' predecessors-in-interest or by plaintiffs. Plaintiffs have all rights to said water for all purposes. Defendant has no legal or equitable right or interest in said water.

Compl. ¶ 10 (emphasis added).

The Complaint further alleges that:

> Ownership of the stock water rights had been established by the prior appropriation doctrine embodied in local custom and law and rules of the State of New Mexico and its courts.

Compl. ¶ 17.

In addition, the Complaint advises the court that:

> At or about the same time that plaintiffs acquired the [Goss] Ranch, it also lawfully acquired the preferences, range rights and water rights and the permits which reflected these historic rights, in accordance with the applicable statutes and USFS procedures.

Compl. ¶ 18.

SGA argues that under the laws of New Mexico, SGA acquired water rights owned by their "predecessor-in-interest." *See* Pl. Opp. at 2, 19; *see also* Compl. ¶¶ 30–32; Pl.Ex. 1–71 (documents that *may* evidence ownership

of certain water rights in the State of New Mexico).

The Government has advised the court that it has not moved to dismiss SGA's claim alleging a taking of the water rights claim because the Complaint fails to identify the purported water rights. *See* Gov't Mot. to Dismiss at 1–2; *see also* Complaint ¶ 32 A (emphasis added) (*"Plaintiff's rights to water found on or originating on the [Sacramento] [A]llotment ...* are property rights."); *id.* ¶ 32 B (emphasis added) (the Government's actions "have *prevented* plaintiffs from *having access to said water* [.]"); *id.* ¶ 32 C (emphasis added) (the Government's actions "have physically appropriated *waters ... belonging to plaintiffs* [.]"); *id.* ¶ 32 D (emphasis added) (the Government "has imposed conditions on access to plaintiffs' water and have interfered with the acquisition and maintenance of improvements necessary to obtaining and using *plaintiffs' water.*");[2] *id.* ¶ 32 E (emphasis added) (the Government's actions "have physically appropriated ... *water belonging to plaintiffs* [.]"). The court considers the Government's statement as a Motion for More Definitive Statement. *See* RCFC 12(e) (describing remedy where a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."); *see also* RCFC 8(e) (requiring that each pleading must be "concise and direct"). Therefore, the court will afford Plaintiffs until September 6, 2005 to amend the Complaint to conform with the requirements of the Rules of the United States Court of Federal Claims and state with specificity the precise water rights that Plaintiffs allege are their property under the laws of the State of New Mexico and how and when such rights were acquired.

The United States Supreme Court held in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) that the existence of a property interest is determined by reference to "existing rules or understandings that stem from an independent source such as state law." Assuming *arguendo* that Plaintiffs can assert

---

**2.** The second sentence of this claim is incomprehensible and should be deleted or amended. *See* RCFC 8(e).

a specific interest in certain water rights that were acquired with title to the real properties that comprise Goss Ranch, the question of whether these rights are recognized as property is determined under the laws of the State of New Mexico. Therefore, assuming *arguendo* that Plaintiffs can allege sufficient facts to establish a claim of ownership in specific water rights, before discovery is undertaken, the court would like the parties' views about the following questions:

Assuming *arguendo* that New Mexico law affords a user of water to property rights therein, how are such property rights recorded to notify the public, and does New Mexico law allow any such property rights to be transferred and if so by what means, and how is such transfer recorded to notify the public?

It may be that these questions have been answered by the Supreme Court of the State of New Mexico or are appropriate for certification. *See* N.M. R. APP. P. 12–607 ("The Supreme Court may answer by formal written opinion questions of law certified to it by a court of the United States."); *see also Schroeder v. United States*, 66 Fed.Cl. 508, 2005 WL 1515896 (Fed.Cl.2005) (certifying question of property law to the Supreme Court of Washington).

Moreover, although the Mining Act of 1866, 43 U.S.C. §§ 661, *et seq.*, recognizes the validity of private water rights obtained pursuant to state water law, the United States Supreme Court held in *Broder v. Natoma Water & Mining Co.*, 101 U.S. 274, 276, 11 Otto 274, 25 L.Ed. 790 (1879) (emphasis in original), that the Act was only a "voluntary *recognition of a pre-existing right of possession*, constituting a valid claim to its continued use, [rather] than the establishment of a new one[;]" *see also Hunter v. United States*, 388 F.2d 148, 151 (9th Cir.1967) (rejecting a claim that the Mining Act of 1866 required recognition of prior "appropriated" water and grazing rights by plaintiff's predecessors). Therefore, it would appear to the court that, although federal law governing the Sacramento Allotment may have recognized the

rights of prior users of the water therein, it does not recognize any alleged successors in interest. The court will be requesting briefing on this issue as well.

**3. The Complaint Alleges Sufficient Facts To State A Claim That The Government May Have Deprived Plaintiffs Of All Economically Viable Use Of The Goss Ranch.**

The Complaint in this case also alleges a claim that the Government has taken actions that have deprived Plaintiffs of "their reasonable, investment-backed expectations" in the Goss Ranch. *See, e.g.*, Compl. ¶¶ 30, 31, 33. The court has determined that this "regulatory" Takings claim has been plead sufficiently to withstand a motion to dismiss, however, Plaintiffs face a very heavy burden of proof to establish that the Government's actions interfered with "reasonable investment-backed expectations" and rendered the Goss Ranch to have "no economically viable use." *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124–25, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ("[The United States Supreme Court] has dismissed challenges to takings claims on the ground that, while the challenged government action caused economic harm, it did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute 'property' for Fifth Amendment purposes.").

**4. The Complaint's Claim For Compensation Arising From The Government's Alleged Taking Of Grazing Permit No. 08–1250 Or Preference Grazing Rights Is Dismissed.**

In addition, the Complaint alleges a Takings Clause claim regarding Grazing Permit No. 08–1250 and/or a grazing preference,[3] in the Sacramento Allotment. *See* Compl. ¶¶ 30, 31, 34.

In *United States v. Fuller*, 409 U.S. 488, 493, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973), the United States Supreme Court considered whether the value added to fee land by graz-

---

**3.** A "grazing preference" is a "superior or priority position against others for the purpose of receiving a grazing permit or lease. This priority

is attached to base property owned or controlled by the permittee or lessee." 43 C.F.R. § 4100.0–5.

ing rights on neighboring permit land was compensable when the Government took the fee land through condemnation and held that "the Fifth Amendment does not require the Government to pay for that element of value based on the use of respondents' fee lands in combination with the Government's permit land." Likewise, in *Alves v. United States*, 133 F.3d 1454 (Fed.Cir.1998), the United States Court of Appeals for the Federal Circuit has explained:

> [T]he distinction between grazing 'permits' and grazing 'preferences' is irrelevant because neither constitutes a property interest compensable under the Fifth Amendment.... Implicit in *Fuller* is the notion that grazing preferences that are attached to fee simple property are not compensable property interests under the Fifth Amendment. What is compensable is the fee interest only, divorced from other governmentally-created rights or privileges appurtenant to the fee. Thus, the distinction between [a] grazing preference and [a] grazing permit is irrelevant from a Fifth Amendment perspective, and neither constitutes a compensable property interest.

*Id.* at 1457; *see also Wyatt v. United States*, 271 F.3d 1090, 1097 (Fed.Cir.2001) ("[T]he existence and initiation of permit proceedings does not itself constitute a taking. Indeed, government could hardly go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.").

Plaintiffs apparently believe that they can escape the prerequisite of having a property right and still assert a claim for compensation under the Fifth Amendment to the United States Constitution. *See* Compl. ¶ 34 B ("To the extent that said grazing right is not property ... plaintiffs' actions in reliance thereon have created reasonable, investment-backed expectations[.]"). Although Plaintiffs may have such expectations, they are not actionable under the Fifth Amendment to the United States Constitution, unless a property interest is affected. *See Lingle v. Chevron, U.S.A., Inc.*, —— U.S. ——, 125 S.Ct. 2074, 2081, 161 L.Ed.2d 876 (2005) (emphasis added) (recognizing "government regulation of *private property* may ... be so onerous that

its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment."). Plaintiffs have not asserted such a private property right.

Accordingly, the First Cause of Action asserted in Paragraphs 30, 31, 32 and 34 of the Complaint, seeking compensation for the alleged taking of Plaintiff's "preference" grazing right, is dismissed, with prejudice.

### CONCLUSION

For the reasons discussed herein, the First Cause of Action concerning the alleged taking of Plaintiffs' "preference grazing right" in the Sacramento Allotment, set forth in Paragraphs 30, 31, 32, and 34 is dismissed with prejudice.

Plaintiffs may amend the First Cause of Action concerning the alleged taking of certain water rights set forth in Paragraphs 30–32 to conform to the Rules of the United States Court of Federal Claims on or before September 6, 2005.

The Second Cause of Action concerning Plaintiffs' right to compensation, pursuant to 43 U.S.C. § 1752(g), set forth in Paragraphs 35–40 of the May 4, 2004 Complaint is dismissed without prejudice.

The court will schedule a telephone conference with the parties to establish an additional briefing schedule to commence after September 6, 2005.

**IT IS SO ORDERED.**